OPINION
Appellant, James A. Benvenuto, appeals a judgment of the Court of Common Pleas of Auglaize County, denying a motion to suppress evidence discovered during searches of his car and home, in which police found illegal pornographic material. Appellant also appeals the trial court's judgments regarding sentencing in case numbers 99-C-22 and 99-C-38. For the reasons that follow, we affirm the judgments of the trial court.
On February 17, 1999, shortly before 7:00 a.m., the Wapakoneta Police Department received a telephone call regarding a suspicious man who was seen running between houses in a residential neighborhood. The neighbor who reported the incident gave a description of the man's clothing to police, and stated that he appeared to be carrying something bulky under his jacket as he darted between houses toward his car. In addition, a description of his car and license number was given to police. In response to the complaint, police officers traced the license number on the car and ascertained that it was registered to Appellant. Accordingly, several officers responded to Appellant's place of employment, the Ohio Department of Transportation (O.D.O.T.).
When the officers arrived at O.D.O.T., they discovered Appellant's car in the parking lot, which matched the exact description given to police just moments earlier. Several officers looked through the windows into Appellant's car, but noticed nothing suspicious. Thereafter, Appellant was asked to step outside the O.D.O.T. building to speak with officers. Officers informed Appellant that they were investigating allegations of a window peeper in the neighborhood where Appellant's car was seen.
The officers then questioned Appellant concerning his whereabouts that morning, and asked for permission to search his car. Initially, Appellant refused to allow the search. Appellant told the officers that he was in that neighborhood earlier in the morning; however, he stated that he had stopped there only to speak with a friend. When asked if he got out of his car in the neighborhood, Appellant told the officers that he did get out of the car, briefly, to jog around the block.
The officers then informed Appellant that the vehicle was going to be held as evidence until they could make application for a search warrant. Following this exchange, Appellant went back inside the O.D.O.T. building to get a drink of water. Upon returning to the parking lot, Appellant recanted his story and verbally admitted that he had been involved in videotaping women earlier that morning. Appellant indicated that a search of his car would reveal a video camera and videotape. Appellant also signed a written consent form permitting the officers to conduct the search.
During the search of Appellant's car, the officers recovered a video camera and videotape. Upon viewing the videotape, the officers found film footage containing nude women dressing and undressing in a tanning salon and locker room. Three of the women on the film were minors. Additionally, police officers found film footage containing nude women who were filmed through windows outside their homes. All of the film footage was taken without the consent of any of the women. Subsequently, a search warrant was issued for Appellant's home. After searching Appellant's home, police officers found a large quantity of pornographic material, including numerous computer diskettes filled with images of young girls engaging in sexual relations with adults and other children.
Thereafter, Appellant was indicted, in case number 99-C-22, on six second degree misdemeanor counts of voyeurism in violation of R.C. 2907.08(B), (E)(3), and nine fourth degree felony counts of pandering obscenity involving a minor in violation of2907.321(A)(5). On March 1, 1999, Appellant pled not guilty to all fifteen counts.
Subsequently, Appellant was indicted, in case number 99-C-38, on three second degree felony counts of illegal use of a minor in nudity-oriented material, in violation of R.C. 2907.323(A)(1). Appellant also pled not guilty to these charges. Upon motion, the trial court consolidated cases 99-C-22 and 99-C-38, but severed the six misdemeanor counts from the felony counts and ordered that they be tried separately.
On July 9, 1999, Appellant moved to suppress all of the evidence recovered from his car, based on lack of probable cause and lack of voluntary consent. He also argued that the subsequent search and seizure of evidence from his home directly resulted from the invalid search of his car, and should be excluded as "fruit of the poisonous tree". On July 26, 1999, the trial court denied Appellant's motion to suppress, ruling that the police officers had probable cause to search Appellant's car, and that Appellant voluntarily consented to the search his car.
Subsequently, Appellant appeared before the trial court on August 13, 1999, and changed his plea from not guilty to no contest on all charges in both cases. Following Appellant's change of plea, the trial court found Appellant guilty on all eighteen charges contained in the two cases. The trial court immediately proceeded to sentencing on the misdemeanor charges, and sentenced Appellant to ninety days in jail and fined him $750 on each of the six counts of voyeurism, to be served consecutively. The court then continued sentencing on the felony charges so that the Ohio Adult Parole Authority could conduct a pre-sentence investigation.
On October 1, 1999, the trial court sentenced Appellant on the nine remaining felony charges in case number 99-C-22, and the three felony charges in case number 99-C-38. With respect to case number 99-C-22, the trial court sentenced Appellant to seventeen months in prison on each of four of the counts of pandering obscenity, to be served concurrently with one another. The court also sentenced Appellant to seventeen months in prison on each of the remaining five counts of pandering obscenity, to be served concurrently with one another. The court then ordered these two sentences to be served consecutively for a total sentence of thirty-four months.
With respect to case number 99-C-38, the court sentenced Appellant to seven years in prison on each of the three counts of illegal use of a minor in nudity-oriented material, to be served concurrently with one another. The court then ordered the three felony sentences in case number 99-C-38 to be served concurrently with the six misdemeanor and nine felony sentences in case number 99-C-22. The total sentence imposed thereby, for all charges was seven years.
Appellant timely appeals the trial court's judgments in case numbers 99-C-22 and 99-C-38, which have been consolidated for purposes of this appeal. Appellant asserts two assignments of error for our review.
Assignment of Error No. 1
 The trial court erred to Appellant's prejudice in overruling Appellant's motion to suppress as there was no demonstrated probable cause to make a warrantless arrest or seizure and search of Appellant's automobile.
 "Upon an appellate court's review of a trial court's ruling on a motion to suppress, the appellate court will affirm the trial court's findings of facts, if supported by competent and credible evidence." State v. Mason (Sept. 29, 1994), Union App. No. 14-94-14, unreported, citing State v. Williams (1993), 86 Ohio App.3d 37. "However, an appellate court will make an independent determination of the law as applied to the facts." Mason, supra.
 The Fourth Amendment to the United States Constitution, asapplied to the states through the Fourteenth Amendment, protectscitizens against unreasonable searches and seizures. State v.Kinney (1998), 83 Ohio St.3d 85. Similar protection is found inArticle I, Section 14 of the Ohio Constitution. Id.
Traditionally, warrantless searches and seizures are per seunconstitutional unless supported by one of the well-establishedexceptions to the warrant requirement. State v. Kessler (1978),53 Ohio St.2d 204. The Ohio Supreme Court has delineated theexceptions as follows:
 Where there is no search warrant, the burden falls on the state to show that a search comes within one of the judicially recognized exceptions:
(a) A search incident to a lawful arrest;
(b) consent signifying waiver of constitutional rights;
(c) the stop-and-frisk doctrine;
(d) hot pursuit;
 (e) probable cause to search, and the presence of exigent circumstances; or
 (f) the plain-view doctrine.
 State v. Penn (1991), 61 Ohio St.3d 720, 723-24, quoting State v. Akron Airport Post No. 8975 (1985), 19 Ohio St.3d 49, 51.
 Herein, the applicable exceptions to the warrant requirementnoted above are (b) consent, and (e) probable cause to search andthe presence of exigent circumstances, also known as theautomobile exception. The application of both of theseexceptions, and the "fruit of the poisonous tree" doctrine arediscussed separately below.
 I. Automobile Exception
Regarding the automobile exception, the Supreme Court of Ohio has stated:
 The well-established automobile exception allows police to conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband or other evidence that is subject to seizure, and exigent circumstances necessitate a search or seizure.
 State v. Mills (1992), 62 Ohio St.3d 357, 367, citing Chambers v. Maroney (1970), 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 428; Carroll v. United States (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. "The mobility of automobiles often creates exigent circumstances, and is the traditional justification for this exception to the Fourth Amendment's warrant requirement." Mills, 62 Ohio St. 3d at 367, citing California v. Carney (1985), 471 U.S. 386, 391, 105 S.Ct. 2066, 2069, 69 L.Ed.2d 406, 413.
This court has previously held that pursuant to the automobile exception, probable cause must be based on objective facts that would support the issuance of a warrant. State v. Powers (Oct. 16, 1998), Marion App. Nos. 9-98-08, 9-98-09, 9-98-10, unreported, citing State v. Welch (1985), 18 Ohio St.3d 88, 92. Additionally, in Powers, we stated:
 This determination of probable cause involves an examination of the totality of the circumstances to make a practical, common-sense decision whether there is a fair probability that contraband or evidence of a crime will be found in a particular place.
 Powers, supra, citing Illinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527; State v. George (1989), 45 Ohio St.3d 325.
On a motion to suppress, when a defendant demonstrates that a search was conducted without a warrant, and challenges the search on probable cause grounds, the prosecutor has the burden of proving, by a preponderance of the evidence, that probable cause existed. City of Xenia v. Wallace (1988), 37 Ohio St.3d 216, 220;State v. Arnett (Dec. 4, 1990), Henry App. Nos. 7-89-4, 7-89-5, 7-89-6, unreported.
In its judgment entry, the trial court determined that thepolice officers had probable cause to believe that Appellant wasguilty of criminal trespass. Therefore, officers were justifiedin seizing Appellant's vehicle for the purpose of having itidentified, and ascertaining whether anything was in the vehiclesuch as the clothing the suspect was wearing, or that which mightexplain the bulge that was seen underneath the suspect's clothing.
Appellant, on the other hand, argues that there was no probable cause to believe that some evidence of a criminal trespass would be found in his vehicle. He further argues that the information obtained from the police report does not indicate that he had committed the crime of criminal trespassing, nor does it reveal that he had taken and carried away anything from the neighborhood. Additionally, Appellant notes that at the suppression hearing, officers testified that they believed they did not have probable cause to arrest Appellant when they responded to his place of employment.
Regardless of the trial court's finding, we note that therecord demonstrates that police officers responded to Appellant'splace of employment on the morning of February 17, 1999 toinvestigate the possibility that Appellant was the suspectedvoyeur, not to investigate the crime of criminal trespassing.Therefore, we will examine the record to determine if the factssupport a finding of probable cause on this issue. In doing so,we point out that probable cause must be based on objective factsand, therefore, we decline to consider the officers' subjectivebeliefs.
The record indicates that on the morning of February 17, 1999, police received a telephone call, relating that the caller had seen a suspicious man running between houses across the street from her house. The suspect was reported as wearing a dark hat, and a dark coat, from which a protruding bulge was seen. The caller also provided police with a physical description of the suspect, as well as detailed information of the suspect's car, including the license number. After tracing the car's license number, police determined that Appellant was the owner.
The record also indicates that prior to the morning ofFebruary 17, 1999, police officers had received several complaintscontaining allegations of a man spying on women through thewindows of their homes, in the same neighborhood where Appellant'scar was seen. Additionally, police were given a description ofthe suspect. At the suppression hearing, there was testimony thatone such complaint came just a week and a half prior to theincident herein, alleging that a man was using a video camera tofilm these women.
Testimony at the suppression hearing also revealed that the description of the suspect given to police on the morning of February 17, 1999 matched the descriptions given to police from prior reported incidents. Furthermore, the description of Appellant's car, including his license number, linked Appellant to the scene where the suspicious individual was seen running between houses.
Accordingly, based on the record before us, we conclude thatthe trial court's finding of probable cause, considering thetotality of the circumstances, is supported by competent, credibleevidence. Additionally, we find that pursuant to Mills, supra,the mobility of Appellant's vehicle created exigent circumstances.If officers had not seized the vehicle, they would have riskedhaving the vehicle, and any potential evidence, removed from thearea.
Therefore, the warrantless seizure of Appellant's vehicle was justified under the automobile exception, as outlined above.
 II. Consent In addition to claiming that officers lacked probable cause toseize his vehicle, Appellant claims that his consent was coercedand, therefore, not voluntary. Appellant claims that policeofficers badgered him to the point where he felt he had no otherchoice than to consent to the search. Specifically, Appellantclaims that police officers told him that if he consented to asearch of his car, he would simply be given a ticket and would beallowed to go back to work.
The record reflects that after police officers informed Appellant that his car would be seized and towed, Appellant went back inside the O.D.O.T. building to get a drink of water. Upon returning to his employer's parking lot, Appellant initiated contact with police officers, verbally confirming their suspicions. At that time, Appellant also signed a written consent form, permitting officers to search his car. The record also reflects that Appellant was neither in custody nor under arrest prior to signing the consent form. As such, there is not aFifth Amendment problem. Therefore, we will analyze the consent issue under the Fourth Amendment to determine whether Appellant waived his privilege against unreasonable searches and seizures.
In analyzing this issue, the standard to be applied is whetherAppellant gave a consent that is "voluntary under the totality ofall the surrounding circumstances." State v. Childress (1983),4 Ohio St.3d 217, 219, citing Schneckloth v. Bustamonte (1973),412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854. In determining thathis consent was voluntary, under the totality of thecircumstances, the trial court noted that Appellant initiatedcontact with police officers prior to consenting to the search ofhis car. Additionally, the trial court held that Appellant'sdecision was not the result of duress or coercion but, rather, wasthe result of "exercising his judgment in the face of thedifficult circumstances that he himself had created by his ownconduct."
We agree with the trial court's characterization of the evidence. As we stated above, the police officers had probable cause to seize Appellant's car. Therefore, Appellant was neither coerced nor was he under duress simply because officers informed Appellant that his car would be seized and held as evidence until a search warrant could be obtained. Additionally, we are not persuaded that the trial court erred in failing to accept Appellant's story that police officers offered him a lesser punishment in exchange for consent to search the vehicle. The trial court is in the best position to determine the credibility of the testimony.
Accordingly, we find that there is competent, credible evidencein the record, with which the trial court determined, under thetotality of the circumstances, that Appellant's consent wasvoluntarily given.
 III. Fruit Of The Poisonous Tree
Appellant also seeks to have the evidence found in his home suppressed because it is a direct result of the search of his car and is, therefore, "fruit of the poisonous tree". Under the "fruit of the poisonous tree" doctrine, warrantless searches, which do not fall in one of the recognized exceptions, "cannot serve as probable cause to support a subsequent warrant." Statev. Posey (1988), 40 Ohio St.3d 420, 427, citing Wong Sun v.United States (1963), 371 U.S. 471, 484, 83 S.Ct. 407, 415,9 L.Ed.2d 441.
Initially, we note that Appellant only argues that the searchof his home was invalid because of the invalid search of his car.The record demonstrates that the parties stipulated that theaffidavit and search warrant of Appellant's home are otherwisevalid within their four corners. Because we held above that thepolice had probable cause to seize Appellant's car, and becauseAppellant's consent was given voluntarily, we therefore determinethat the search of Appellant's home was valid, and not the "fruitof the poisonous tree".
Accordingly, Appellant's first assignment of error is not well taken and is therefore overruled.
Assignment of Error No. 2
 The trial court erred to Appellant's prejudice and abused its discretion by ordering excessive sentences in this case.
 Appellant argues that both the misdemeanor sentences and fines, and the felony sentences are unduly excessive in relation to the crimes committed. Because the appellate standard of review differs with respect to misdemeanor and felony sentencing, we will address the two separately.
 I. Misdemeanor Sentences/Fines
The standard for determining whether a trial court erred in imposing a sentence for a misdemeanor is abuse of discretion.State v. Garfield (1986), 34 Ohio App.3d 300. An abuse of discretion has been characterized as a decision that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1993), 5 Ohio St.3d 217.
The penalties for misdemeanors committed in Ohio are set forthin R.C. 2929.21, which states:
* * *
 (B) Except as provided in division (G) of this section, terms of imprisonment for misdemeanor shall be imposed as follows:
 (2) For a misdemeanor of the second degree, not more than ninety days;
(C) Fines for misdemeanor shall be imposed as follows:
 (2) For a misdemeanor of the second degree, not more than seven hundred fifty dollars.
 Prior to sentencing a defendant pursuant to R.C. 2929.21, however, the trial court is obligated to consider several criteria in R.C. 2929.22 in favor of imposing imprisonment, as well as the criteria in divisions (C) and (E) in R.C. 2929.12, which mitigate the seriousness of the offense.
Appellant argues that the trial court made no findings of fact regarding the factors in R.C. 2929.22 prior to imposing the maximum consecutive sentences and fines and, therefore, his sentence is unduly excessive. However, the record indicates that at the misdemeanor sentencing hearing the trial court acknowledged that it must consider the factors in R.C. 2929.21 and 2929.22. Additionally, at the hearing, the parties were afforded the opportunity to present oral argument with respect to mitigation.
Although Appellant claims that the trial court failed toconsider the factors in R.C. 2929.21 and 2929.22, the recordestablishes otherwise. There is, quite simply, nothing toindicate that the trial court did not consider the factors ineither section prior to sentencing Appellant for the misdemeanors.Additionally, because Appellant failed to raise this issue attrial, there is a presumption that the trial court considered theappropriate factors. State v. Adams (1988), 37 Ohio St.3d 295,297, citing State v. Davis (1983), 13 Ohio App.3d 265.
Therefore, we find that the trial court's decision to sentence Appellant on the misdemeanor charges is not unreasonable, arbitrary or unconscionable, and does not constitute an abuse of discretion.
 II. Felony Sentencing With respect to the felony sentencing, R.C. 2953.08(G)(1)provides that a reviewing court may vacate the sentence and remandthe matter to the trial court for re-sentencing if the courtclearly and convincingly finds either that "(a) the record doesnot support the sentence; * * * [or] (d) the sentence is otherwisecontrary to law." State v. Gonzalez (June 30, 1999), Allen App.No. 1-98-84, unreported.
Appellant argues that the prosecuting attorney and the trial court judge displayed a vindictive and vengeful attitude toward him during the felony sentencing. Specifically, Appellant argues that at the sentencing hearing the prosecuting attorney requested that the trial court impose a much more stringent sentence than initially recommended during pretrial plea discussions. Appellant claims that the reason for such a marked change is because he would not relinquish his constitutional right to appeal by pleading guilty. Appellant also claims that the trial court's seven-year sentence is vindictive and vengeful in light of his unwillingness to plead guilty.
In support of his argument, Appellant cites North Carolina v.Pearce (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 andColumbus v. Bee (1979), 67 Ohio App.2d 65. While both of thesecases stand for the generally accepted proposition that it isimproper for a trial court to vindictively sentence a defendantusing improper considerations, neither case is applicable to thefacts herein. The case herein neither involves a secondsentencing after a successful appeal as in Pearce, nor evidence ofcourt involvement in plea-bargaining as in Bee. Our review ofsentencing must focus on whether the court complied with theextensive statutory guidelines provided. R.C. 2953.08(G)(1).
R.C. 2929.14(A) provides that a sentence on a felony of the second degree, the most serious offense that the Appellant was sentenced for in this case, may properly range from two years to eight years. R.C. 2929.12 mandates that the court, in making the final sentencing determination, shall consider certain factors relating to seriousness and recidivism to arrive at an appropriate result.
Particularly, R.C. 2929.12(B) states that the court shall consider the following factors to determine whether the "offender's conduct is more serious than conduct normally constituting the offense":
 (1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 (3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
 (4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
 (5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
 (6) The offender's relationship with the victim facilitated the offense.
 (7) The offender committed the offense for hire or as a part of an organized criminal activity.
 (8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
 R.C. 2929.12(C) states that the court shall also consider the following to determine whether "the offender's conduct is less serious than conduct normally constituting the offense":
 (1) The victim induced or facilitated the offense.
 (2) In committing the offense, the offender acted under strong provocation.
 (3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.
 (4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.
 R.C. 2929.12(D) requires the sentencing court to consider the following to determine whether "the offender is likely to commit future crimes:"
 (1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing * * *.
 (2) The offender previously was adjudicated a delinquent child * * * or the offender has a history of criminal convictions.
 (3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child * * * or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
 (4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense * * *.
(5) The offender shows no genuine remorse for the offense.
 Finally, R.C. 2929.12(E) sets forth the criteria the sentencing court must consider in determining whether the offender is not likely to commit future crime:
 (1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.
 (2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.
 (3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.
 (4) The offense was committed under circumstances not likely to recur.
(5) The offender shows genuine remorse for the offense.
 It is obvious from both the sentencing hearing transcript and the judgment entry issued in the case at bar that the trial court, in considering all of the foregoing factors, made the required findings that Appellant's conduct was more serious and that he was likely to commit future crimes.
With respect to the issue of seriousness, the trial court found that the victims herein suffered mental injury and serious psychological harm, which was exacerbated by the age of the victims. Furthermore, the trial court found that the Appellant was motivated to commit these crimes by prejudice based upon the gender of the victims. The trial court also commented that it could not find that Appellant did not expect to cause harm because harm would be the natural result if the victims found out about his activities. Finally, the trial court found that none of the victims induced or facilitated the offenses, and that there were no substantial grounds to mitigate the Appellant's conduct.
Although we acknowledge that the very nature of the offense involves gender, we cannot conclude that a trial court should be precluded from examining this factor when determining an appropriate sentence. See State v. Hess (May 13, 1999), Franklin App. No. 98AP-983, unreported, for an analogous discussion regarding age as a factor. A sentencing court must be able to analyze the particular facts of each case to properly enter the findings required by the felony sentencing laws. Id. We must also point out that the language of the statute does not prohibit courts from considering the factors set forth in R.C. 2929.12 in these types of cases or from any other offense that would include similar factors as an essential element of the crime.
With respect to the issue of recidivism, the trial court found that Appellant was likely to commit future crimes because of his admitted long term addiction to sexually oriented conduct; that the circumstances surrounding these offenses were likely to recur; and that Appellant has a history of criminal convictions and that he has failed to respond favorably to probation. Based upon these reasons, the court found that Appellant poses the greatest likelihood of committing future crimes.
Appellant asserts that the trial court's findings regarding remorse establish that he was being punished more severely because he refused to enter a guilty plea, which would have eliminated his right to appeal the suppression issues. In particular, the court found that the Appellant's expressions of remorse were not sincere since he refused to accept responsibility for his actions, stating that because the Appellant has not plead guilty, he has failed to accept responsibility for his actions and that his expressions of remorse are therefore insincere.
While such statements by a trial court are improvident at best, and tend to create an inference of vindictiveness, it does not appear that the trial court included lack of remorse as a reason to support its finding on recidivism. We further conclude that even assuming genuine remorse, upon the record before us, the factors indicating recidivism still outweigh the factors indicating that the Appellant is less likely to recidivate.
Based upon our independent review of the sentencing record, including the presentence investigation report, we find substantial evidence that if accepted by the trial court, supports the trial court's conclusions. Therefore, we cannot conclude that the trial court clearly and convincingly rendered a prison sentence that was contrary to law.
Appellant's second assignment of error is overruled.
Having found no error prejudicial to Appellant herein, in the particulars assigned and argued, the judgments of the trial court are hereby affirmed.
Judgments Affirmed.
 WALTERS, J.
 HADLEY, P.J., and SHAW, J., concur.