CITY OF COLUMBUS, APPELLEE, *v.* BEE, APPELLANT.

[Cite as Columbus v. Bee (1979), 67 Ohio App. 2d 65.]

(No. 79AP-368—Decided December 13, 1979.)

*Mr. Gregory S. Lashutka,* city attorney, *Mr. Ronald J. O'Brien,* city prosecutor, and *Mr. David E. Tingley,* for appellee.

*Mr. Christen R. Blair,* for appellant.

McCORMAC, J.   Defendant-appellant, Faye Bee, has appealed her conviction in the Franklin County Municipal Court of negligent homicide of her husband, asserting the following assignments of error:

"1. Whether the verdict was against the manifest weight of the evidence.

"2. Whether the trial court erred in not giving defendant's requested jury instruction on the defense of accident; thereby confusing the jury as to the role accident should play in their deliberation and violating the defendant's due process right to present a defense.

"3. Whether the trial court erred in refusing to give defendant's requested jury instruction clarifying the difference between criminal negligence and ordinary negligence.

"4. Whether the trial court erred in penalizing the defendant for her decision to exercise her right to a trial, by ignoring statutory sentencing guidelines and by sentencing the defendant to the maximum period of confinement.

"5. Whether the trial court erred in denying defense counsel an opportunity to participate in an in camera inspection of a prosecution witness' prior written statement, thereby denying counsel the opportunity to discover that the wrong statement was provided the court for inspection, thus denying the defendant any inspection at all of the proper statement.

"6. Whether the trial court erred in failing to give appellant's requested instruction concerning circumstantial evidence with the general charge and by identifying the instruction as one requested by the appellant.

"7. Whether the statutory definition of reasonable doubt, R. C. §2901.05(D), which was read to the jury, violated appellant's right to due process of law by permitting conviction by a standard of proof which is less than the constitutionally mandated proof beyond a reasonable doubt."

Appellant's first assignment of error is that the jury verdict is against the manifest weight of the evidence.

Appellant testified that she and her husband were sitting at their kitchen table when he decided that he should show her how to use his rifle so that she could protect herself because he was going into the hospital in the near future and felt that the neighborhood was not safe. They both had been drinking — he having consumed about eight beers and she having had a double vodka. He was also taking prescription tranquilizers and should not have been mixing alcohol with them. He obtained the rifle from his bedroom despite her protests. She was not familiar with guns, was frightened of them and had never handled a gun before. When he insisted, she told him to be sure that the gun was not loaded and he assured her that it was not. Upon returning to the kitchen with the gun, he handed it to her and told her to push down the bolt. He then told her to point the gun at him. At this time, they were both seated at the kitchen table. She was very nervous about handling the gun and did not check for herself to see if the gun was loaded, because of her fear of and unfamiliarity with guns as well as her knowledge that her husband was a rifle expert. She stated that the gun went off, striking her husband in the chest, but she did not remember pulling the trigger. She called the telephone operator to report the shooting, and the fire and police departments were summoned to the scene.

In other testimony, presented by the prosecution, the officers, who first arrived at the scene, testified that they observed appellant sitting calmly in a living room chair near the decedent's body and that she exhibited signs of a person who had been drinking, *i.e.,* glassy eyes and unclear speech.

The investigating detectives testified that appellant gave a statement to police in which she said that she and the decedent were at home drinking and had had an argument; that after the argument had subsided, decedent proceeded to show her how to use the rifle in the event someone tried to break into their apartment while he was in the hospital; and, that he handed her the weapon, assuring her that it was unloaded, and told her to cock the weapon, point it at him and pull the trigger, which she did, at which time it discharged.

A police chemist, who examined the decedent's clothing, found powder burns at the location of the entrance wound and

testified that the wound was a contact wound, indicating that the barrel of the rifle was in contact with the clothing when the rifle discharged.

The defense presented an expert witness who testified that the trigger pull on the rifle was so light that it would be possible for the gun to "go off spontaneously" without being touched or for a person holding the gun to cause it to go off without realizing that he had pulled the trigger.

Based upon the above evidence, the jury found appellant guilty of negligent homicide under Section 2303.05 of the Columbus City Code, which provides:

"(A) No person shall negligently cause the death of another by means of a deadly weapon or dangerous ordnance as defined in Section 2323.01 of the Columbus City Codes.

"(B) Whoever violates this section is guilty of negligent homicide, a misdemeanor of the first degree." (Cf. R. C. 2903.05.)

Appellant argues that the city failed to prove, beyond a reasonable doubt, that she negligently caused her husband's death. Negligence is defined by Section 2301.06(D) of the Columbus City Code, as follows:

"A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist." (Cf. R. C. 2901.22[D].)

Appellant relies upon the case of *State* v. *Lovejoy* (1976), 48 Ohio Misc. 20, in which a defendant who was charged with negligent homicide was acquitted. In *Lovejoy*, the defendant was acting in defense of the safety of his home. During a struggle in which he was trying to prevent the victim from entering his home, the defendant unintentionally pulled the trigger of his pistol; and, the discharge resulted in the intruder's death. The court in *Lovejoy, supra,* at page 26, stated:

"It is the law that where one is assaulted in his home, or the home itself is attacked, the slayer may use such means as the slayer in good faith believes are necessary to repel the assailant from the house, or to prevent the assailant's forcible

entry, or his material injury to the slayer's home, even to the taking of life.

"Thus, the accused is not criminally responsible for a death and cannot be found negligent when he is acting in self-defense or in defense of the safety of his home during which defense the victim dies from the accidental discharge of a gun in the hand of the home owner during a struggle between the home owner and the assailant in attempting to prevent the entry of victim into the homeowner's home."

The circumstances herein are significantly different than in *Lovejoy, supra,* as appellant voluntarily pointed the rifle directly at the decedent at close range.

Significantly, one of the authorities relied upon by the court in the *Lovejoy* case (*supra,* at page 25) is 40 American Jurisprudence 2d 406, 407, Homicide, Section 112, which states:

"***[A] homicide is excused when caused by the discharge of a gun or pistol which the slayer did not intentionally point at the deceased, and while he was not engaged in any unlawful act, and without any carelessness or negligence on his part***."

It was not unreasonable for the jury to find that appellant was criminally negligent in pointing a gun, which as far as she knew could have been loaded, at decedent, and that she failed to perceive and avoid the risk that it was loaded, and if discharged at such close range, would result in injury.

Appellant's first assignment of error is overruled.

Appellant's second assignment of error is that the court erred in refusing to instruct the jury on the defense of accident.

Appellant argues that the defense of accident is essential to two important aspects of her case. First, she contends that the entire incident was an accident — an example of misadventure, misfortune or ill luck. Secondly, she urges that the discharge of the gun itself was an accident.

When the evidence warrants it, and it is a proper issue, the defendant has a right to an instruction on accidental homicide. *State* v. *Champion* (1924), 109 Ohio St. 281. However, the cases in which the defense of accident have been held to be applicable are cases in which intent was an element of the offense charged. Here, intent is not an element of negligent homicide.

An instruction on accident should not be given unless purpose is an element of the offense. See 4 Ohio Jury Instructions (Provisional) 72, Section 411.01, Committee Comment. The defense of accident is inappropriate in a negligence case. In *State* v. *Poole* (1973), 33 Ohio St. 2d 18, 20, the court stated:

"By raising the defense of accident, 'the defendant denies any intent***. He denies that he committed an unlawful act and says that the result is accidental.' Evidence which he offers in his own behalf to establish such a defense constitutes a denial or contradiction of evidence offered by the prosecution to prove an intent to kill.***"

Where intent is not an element of the offense charged, a jury instruction on the defense of accident would be confusing. Inherent in an offense based on criminal negligence is the premise that, even if defendant's conduct was unintentional and performed with no wrongful purpose, the defendant may still be guilty—based not upon purpose or intent, but upon a substantial lapse from due care. The instruction, which appellant requested be given to the jury, would excuse the homicide if it was the result of accident or misadventure, which does not clearly rule out criminal negligence. The instruction would be confusing to the jury.

Appellant's second assignment of error is overruled.

Appellant's third assignment of error is that the court erred in refusing to give her requested jury instruction as to the difference between criminal negligence and ordinary negligence.

Appellant requested that the following instruction be given in addition to the standard instruction:

"This is a higher degree of negligence than ordinary negligence. For one to be negligent under this section, she must be guilty of a substantial departure from due care, whereas ordinary negligence requires a failure to exercise due care.

"The negligence required here is the type of conduct that amounts to a material forsaking of expected concern, a vital abandonment of required care, or a real divergence of appropriate concern.***"

Instead, the court read the instruction suggested by the Ohio Jury Instructions (see 4 Ohio Jury Instructions [Provisional] 52, 137, Sections 409.31 and 503.05), as follows:

"The court: Ladies and gentlemen, it's my job to give you a few instructions to aid you when you retire to this jury room to decide this case.

"Now, this defendant, this lady, has been charged with a violation of Section 2303.05 of the Columbus City Code, relative to negligent homicide. This ordinance or statute states in part and briefly: No person shall negligently cause the death of another by means of a deadly weapon or dangerous ordnance. Whoever violates this section is guilty of negligent homicide, a misdemeanor of the first degree.

"* * *

"* * *Now, before you can convict this defendant or find her guilty, the City must prove to you beyond a reasonable doubt that on the date and time in question, this defendant negligently caused the death of her husband, Lawrence Bee, by means of a deadly weapon, namely, a .22 caliber rifle. At this point, I believe a few definitions of certain terms used in this charge would be in order.

"A deadly weapon means any instrument, device or thing capable of inflicting death and designed or specially adapted for use as a weapon or possessed, carried or used as a weapon. In other words, a deadly weapon is some object which, because of its nature and the manner and circumstances in which it was used, was capable of producing death.

"A person is criminally negligent or a person acts negligently when, because of a substantial lapse of due care, he fails to perceive or to avoid a risk that his conduct may cause a certain result or be of a certain nature.

"A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or to avoid a risk that such circumstances may exist.

"Due care is that amount of care which a reasonably prudent or an ordinarily cautious person is accustomed to use under the same or similar circumstances. You will observe that the lapse or failure to use due care must be substantial. The lapse must be a material departure from the standard of due care. If you find that this defendant failed to use due care, then you must determine if her failure was a substantial lapse or departure from the standard of due care."

The additional language requested by appellant does not clarify the meaning of "a substantial lapse from due care" and,

if anything, adds confusion and may possibly mislead a jury. The trial court did not abuse his discretion in rejecting the proposed instruction, the matter having been adequately covered in the quoted charge.

Appellant's instruction assumes that the jury is familiar with the standard of care in civil negligence actions, which may not be an accurate assumption.

Appellant cites *Bahm* v. *Pittsburgh & Lake Erie Rd. Co.* (1966), 6 Ohio St. 2d 192, to support her argument for an expanded jury instruction. However, the case is equally supportive of an argument against the proffered instruction. The court, in *Bahm, supra,* at page 194, stated:

"* * * [T]he purpose of the jury instruction is to clarify the issues and the jury's position in the case. It must be remembered that juries are composed of ordinary men on the street, not trained grammarians, and that fine distinctions in the meaning of words or phrases are not ordinarily recognized by the average layman. Thus, in considering the propriety of any instruction, the meaning of the words used in the instruction must be thought of in their common meaning to the layman and not what such words mean to the grammarian or the trained legal mind."

Appellant's requested jury instruction compounds, rather than clarifies, the definitional problem created by the "substantial lapse" language in Section 2301.06(D) of the Columbus City Code.

Appellant's third assignment of error is overruled.

Appellant's fourth assignment of error is that the court erred in penalizing her for exercising her right to a jury trial, by imposing the maximum sentence and by ignoring statutory sentencing guidelines.

Appellant argues that the trial court proposed probation to defense counsel in return for a plea of no contest and sought to encourage acceptance of the proposal by indicating that appellant would pay the price of confinement if she went to trial.

The transcript of the proceedings reflects the following exchange between the trial judge and defense counsel, outside the presence of the jury and prior to the presentation of the prosecution's case in chief:

"The court: May I ask another thing? Are we really ac-

complishing anything by taking this lady through this trial? I imagine it's been a traumatic experience for her.

"Mr. Wamsley: Your Honor, it has been.

"The court: It isn't going to get any better.

"Mr. Wamsley: Like we were saying last Tuesday—and we had hoped at that point that it would be disposed of last Tuesday, and we wouldn't have to go through a trial.

"The court: Well, let me ask you this: If she were to plead no contest and, perhaps, be given probation and it's over with, is this accomplishing anything?

"Mr. Sowash: Your Honor, we've discussed this with our client, Mrs. Bee; we've discussed it at length and—

"The court: Now, she's never been in any trouble before?

"Mr. Sowash: She feels very vulnerable being charged with this in front of the community and community conscience, and she also feels very sincerely that she needs to be found not guilty. She feels she didn't cause her husband's death, and she won't plead guilty to that charge.

"The court: I wasn't speaking of guilty. But going on a step further, if this jury does convict her, which they may or may not do—and there's no guarantee—then there's a problem.

"Mr. Sowash: We've—

"The court: As far as confinement is concerned, I might as well just put the cards on the table. I'm not here to play games. Has she ever been in any trouble before, to speak of?

"Mr. Sowash: No.

"The court: So she's got a clean record, and so forth."

After conviction and before sentencing, the following conversation occurred:

"Mr. Blair: * * * But I would ask the court [to] at least consider a suspended sentence then. [I'm] [r]eally concerned about Mrs. Bee's health if she goes to jail for this at all. And I believe the court initially did suggest the possibility of probation in this case * * * [—]was brought up by the prosecutor and the court last week.

"The court: That was the original suggestion short of a jury trial, yes. Yeah, that was discussed."

Not only does the prosecution dispute appellant's interpretation of the above conversations, but also it contends that

probation is precluded by R. C. 2951.02, which provides, in part, as follows:

"(F) An offender shall not be placed on probation when any of the following applies:

"(1) The offense involved is aggravated murder or murder.

"(2) The offender is a repeat or dangerous offender as defined in section 2929.01 of the Revised Code.

"(3) The offense was committed while the offender was armed with a firearm or dangerous ordnance as defined in section 2923.11 of the Revised Code.

"(4) The offense involved is a violation of section 2907.02 or 2907.12 of the Revised Code."

Under the statutory scheme governing the granting of probation, all offenses are probationable except aggravated murder, murder and offenses committed while armed with a dangerous weapon; and, all offenders except repeat and dangerous offenders are eligible for probation. Thus, the categories of persons who are eligible for probation includes persons who intentionally injure persons or property, so long as they are unarmed and are not repeat or dangerous offenders. It would be illogical to construe R. C. 2951.02(F)(3) to preclude the possibility of probation for an unintentional offense, albeit having serious results, and to permit it for offenses which were intentionally committed. The obvious intent of the legislature in enacting this section was to deter the use of deadly weapons in the commission of offenses and to impose a greater penalty when weapons are used—not to make its provisions applicable to a negligent homicide committed with such a weapon. In any event, even if the offense is nonprobational, the defendant may be sentenced, within the discretion of the court, from a minimum of one day to a maximum of six months.

With respect to whether the conversation with the judge constituted a proposal of probation in return for a plea of no contest, there is little question that the implication of the judge's statement was that probation was a possibility if there was a plea of no contest (and therefore no trial), but would probably not be given if she went to trial and was convicted. The fact that appellant ultimately received the maximum sentence without any consideration of statutory sentencing

guidelines makes it clear that appellant was penalized for insisting on a trial.

The United States Supreme Court has never decided the constitutional issue raised by appellant, *i.e.,* that this type of conduct by the court violates a defendant's right to a fair and impartial trial. Several federal courts have held that a person may not be punished by a more severe sentence because he defends himself at a trial and yet is convicted. The harsher sentence is suspect as being based upon improper criteria, under the circumstances herein, where the trial court obviously was not anxious to try the case. The test then should be that outlined in *United States* v. *Stockwell* (C.A. 9, 1973), 472 F. 2d 1186, 1187-1188, certiorari denied (1973), 411 U. S. 948, where under similar circumstances, the court held as follows:

"***[O]nce it appears in the record that the court has taken a hand in plea bargaining, that a tentative sentence has been discussed, and that a harsher sentence has followed a breakdown in negotiations, the record must show that no improper weight was given the failure to plead guilty***[and] must affirmatively show that the court sentenced the defendant solely upon the facts of his case and his personal history, and not as punishment for his refusal to plead guilty. ***"

The record supports a contrary conclusion in this case.

Appellant also argues that the trial court erred in failing to consider the sentencing factors outlined in R. C. 2929.22 and 2929.12. R. C. 2929.22 provides, in part, as follows:

"(A) In determining whether to impose imprisonment or a fine, or both, for misdemeanor, and in determining the term of imprisonment and the amount and method of payment of a fine, the court shall consider the risk that the offender will commit another offense and the need for protecting the public therefrom, the nature and circumstances of the offense, the history, character, and condition of the offender and his need for correctional or rehabilitative treatment, and the ability and resources of the offender and the nature of the burden that payment of a fine will impose on him.

"(B) The following do not control the court's discretion, but shall be considered in favor of imposing imprisonment for misdemeanor:

"(1) The offender is a repeat or dangerous offender;

"(2) Regardless of whether or not the offender knew the

age of the victim, the victim of the offense was sixty-five years of age or older or permanently and totally disabled at the time of the commission of the offense.

"(C) The criteria listed in section 2929.12 of the Revised Code, favoring shorter terms of imprisonment for felony, do not control the court's discretion, but shall be considered against imposing imprisonment for misdemeanor.

"(D) The criteria listed in divisions (B) and (C) of this section shall not be construed to limit the matters which may be considered in determining whether to impose imprisonment for misdemeanor."

R. C. 2929.12 provides, in part, as follows:

"(A) In determining the minimum term of imprisonment to be imposed for felony, and in determining whether to impose a fine for felony and the amount and method of payment of a fine, the court shall consider the risk that the offender will commit another crime and the need for protecting the public therefrom, the nature and circumstances of the offense, the history, character, and condition of the offender and his need for correctional or rehabilitative treatment, and the ability and resources of the offender and the nature of the burden that payment of a fine will impose on him.

"(B) The following do not control the court's discretion, but shall be considered in favor of imposing a longer term of imprisonment for felony:

"(1) The offender is a repeat or dangerous offender;

"(2) Regardless of whether or not the offender knew the age of the victim, the victim of the offense was sixty-five years of age or older or permanently and totally disabled at the time of the commission of the offense.

"(C) The following do not control the court's discretion, but shall be considered in favor of imposing a shorter minimum term of imprisonment for felony:

"(1) The offense neither caused not threatened serious physical harm to persons or property, or the offender did not contemplate that it would do so;

"(2) The offense was the result of circumstances unlikely to recur;

"(3) The victim of the offense induced or facilitated it;

"(4) There are substantial grounds tending to excuse or justify the offense, though failing to establish a defense;

"(5) The offender acted under strong provocation;

"(6) The offender has no history of prior delinquency or criminal activity, or has led a law-abiding life for a substantial time before commission of the present offense;

"(7) The offender is likely to respond quickly to correctional or rehabilitative treatment.

"(D) The criteria listed in divisions (B) and (C) of this section shall not be construed to limit the matters that may be considered in determining the minimum term of imprisonment to be imposed for felony."

In determining the sentence, the trial court is required to consider the factors set forth by these statutes, but the provisions do not control the court's discretion in imposing imprisonment. This court cannot invade the province of the trial court by setting aside a sentence so imposed if there is no clear showing that the trial court abused its discretion. *Toledo* v. *Reasonover* (1965), 5 Ohio St. 2d 22.

Although the court's discretion to impose a sentence within the statutory guidelines is very broad, the record in this case, particularly that portion containing the trial court's plea discussion, indicates that the court abused its discretion in imposing sentence by failing to consider the statutory criteria outlined above, electing instead to arbitrarily impose the maximum penalty as a price of ignoring the court's plea bargaining recommendation.

In the future, some of the problems of this case could be avoided by following the mandate of the Ohio Supreme Court expressed in *State* v. *Griffey* (1973), 35 Ohio St. 2d 101, 113, as follows:

"It should be emphasized,***that***'[t]he trial judge should not participate in plea discussions.'***"

Appellant's fourth assignment or error is sustained.

Appellant's fifth assignment of error is that the court erred in denying defense counsel an opportunity to participate in an in camera inspection of a prosecution witness' prior written statement.

During cross-examination of the witness, defense counsel discovered that the witness had taken notes while interviewing appellant. Counsel then requested an in camera inspection of those notes, pursuant to Crim. R. 16(B)(1), which provides, in part, as follows:

"(g) Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.

"If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.

"If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.

"Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal."

Although the trial court examined the notes submitted by the prosecution, he did not permit defense counsel to look at them. In *State* v. *White* (1968), 15 Ohio St. 2d 146, 157-158, the court stated:

"By an *in camera* inspection, we mean a review by the court *at which counsel for the state and counsel for the defense are present and participating.* If the judge determines that inconsistencies exist between the testimony of the witness and his prior statement, and such inconsistencies are of so substantial a nature that the demands of a fair trial and due process require that the defense be permitted to cross-examine the witness as to such inconsistency, the statement should be released to defense counsel. Otherwise, defense counsel is bound under obligation of his oath of office as an attorney to erase from his mind, and never to use, any information received from the *in camera* inspection." (Emphasis added.)

Defense counsel must be given an opportunity to participate by inspecting the documents personally, rather than merely be permitted to be present when the court inspects them. An advocate is frequently in a better position than the court to spot inconsistencies, being much more familiar with the entire case. Thus, the advocate is able to intelligently argue that matter prior to the court's ruling. The trial court's denial of defendant's request to inspect the documents was error.

The notes inspected by the trial court and made part of the record on appeal do not appear to be the notes taken by the witness while he was conducting the interview with appellant, but, instead, appear to be a narrative based on the notes. However, the prosecution claims that the only handwritten notes that the witness made in connection with this case were those which were submitted to the court.

Nonetheless, the transcript of testimony at trial is unclear as to whether the witness had taken other notes at the time of the interview, and later summarized them, and whether such other notes were still in existence.

Had the trial court permitted defense counsel to participate in the in camera inspection as required by Crim. R. 16, the matter of the notes may have been clarified and defense counsel could have conducted his cross-examination accordingly. As it stands, the jury was left with the impression that the witness in question was testifying from notes taken during his interview of appellant, and defense counsel may have lost an opportunity for impeachment.

Appellant's fifth assignment of error is sustained.

Appellant's sixth assignment of error is that the court erred in failing to give her requested instruction on circumstantial evidence with the general charge and in identifying the instruction as one requested by defendant.

Appellant requested that an instruction as to circumstantial evidence be given, but the court reserved ruling on the request until after oral arguments were presented and the court had given its general charge to the jury. Following this, appellant requested an additional instruction which the court gave, stating that "this additional instruction was requested by defense counsel."

Appellant argues that the court violated Crim. R. 30, which requires that "* * *[t]he court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury* * *." The court erred in not complying with this requirement, which is designed to enable counsel to argue the case in light of the law which is to be applied.

Crim. R. 30 sets forth the procedure for instructions. The court may in its discretion reduce its charge to writing. If the charge is reduced to writing, it must include the entire charge. There are not separate or special charges any longer. Re-

quested instructions, which are accepted and approved by the court, are to be inserted in the charge in language approved by the court. No part of the charge is to be identified with a particular party. The rationale of *State* v. *Stanton* (1968), 15 Ohio St. 2d 215, and *Rosenberry* v. *Chummey* (1960), 171 Ohio St. 48, is applicable to requested instructions. In *Stanton, supra,* at page 216, the court explained the reason as follows:

" ' * * * When a special instruction is given at the request of a party, it is not given as an instruction of such party but as an instruction of the court itself and becomes the law of the case.'

" * * *

"The court's statement that such an instruction is given at the request of a party is likely to indicate to the jury that it is not as much an instruction of the court as are other parts of the court's charge."

It was error for the court to indicate who proffered the additional instruction and to neglect to incorporate the requested instruction, which the court found to be proper, in the general charge.

Appellant's sixth assignment of error is sustained.

Appellant's seventh assignment of error, that the trial court's definition of "reasonable doubt," as set forth by R. C. 2901.05(D), violated appellant's due process rights, is disposed of by the case of *State* v. *Nabozny* (1978), 54 Ohio St. 2d 195, judgment vacated on other grounds (1978), 439 U. S. 811, which upheld the constitutionality of this statute.

Appellant's seventh assignment of error is overruled.

Appellant's fourth, fifth and sixth assignments of error are sustained, and appellant's first, second, third and seventh assignments of error are overruled. The judgment of the Franklin County Municipal Court is reversed and the cause is remanded for a new trial consistent with this decision.

*Judgment reversed*
*and cause remanded.*

REILLY and MOYER, JJ., concur.