OPINION
In July 1999, Mark A. Hill was indicted by a Franklin County grand jury on one count of failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331.[1] The charge, commonly referred to as "fleeing," arose as the result of an earlier incident during which Mr. Hill purportedly fled from the police in his automobile. The charge was enhanced from a misdemeanor to a fourth-degree felony based upon the allegation that Mr. Hill's actions "caused a substantial risk of serious physical harm to persons or property." Pertinent facts are set forth below in our discussion of the fourth assignment of error.
In December 1999, Mr. Hill entered a guilty plea to the felony fleeing, which carried a maximum penalty of eighteen months' imprisonment. Upon a joint recommendation of counsel, the trial court sentenced Mr. Hill to twelve months in prison.
For reasons discussed in the third assignment of error, Mr. Hill subsequently filed a motion seeking to withdraw his guilty plea and asking for a jury trial. The trial court granted the motion.
A jury trial commenced in April 2000. The jury ultimately found Mr. Hill guilty.
Pursuant to a judgment entry journalized in April 2000, the trial court ordered that Mr. Hill serve the maximum sentence of eighteen months.
Mark A. Hill (hereinafter "appellant") has timely appealed his conviction and sentence, assigning four errors for our consideration:
First Assignment of Error
 The trial court erred to the prejudice of the appellant by imposing the maximum sentence without consideration of the factors set forth in O.R.C. 2929.12.
 Second Assignment of Error
 The trial court erred to the prejudice of the appellant by imposing the maximum sentence allowable without consideration of the factors set forth in O.R.C. 2921.331(C)(5)(b).
 Third Assignment of Error
 The trial court erred to the prejudice of the appellant by imposing the maximum sentence allowable after appellant withdrew his guilty plea.
 Fourth Assignment of Error
 The verdict is against the manifest weight of the evidence and the evidence is insufficient to support said conviction.
Since appellant's fourth assignment of error raises evidentiary issues potentially dispositive of this appeal, we address it first.
Preliminarily, we set forth the similar, yet distinct, standards by which we are bound in reviewing this assignment of error, which challenges both the sufficiency of the evidence, and the manifest weight of the evidence.
"The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v.Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. InThompkins, the court explained at length the distinctions between the two standards:
 With respect to sufficiency of the evidence, '"sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson
(1955), 162 Ohio St. 486 * * *. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida
(1982), 457 U.S. 31, 45, * * * citing Jackson v. Virginia (1979), 443 U.S. 307 * * *.
When reviewing the sufficiency of the evidence to support a conviction, an appellate court must review the record to determine "whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. In Jenks, the Supreme Court set forth the stringent standard of review to be applied in a sufficiency analysis:
 "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
In contrast, as explained in Thompkins, supra, a manifest weight analysis is slightly different:
 Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Robinson, supra, 162 Ohio St. at 487 * * *. Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) Black's, supra, at 1594.
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a '"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42 * * *. See, also, State v. Martin
(1983), 20 Ohio App.3d 172, 175 * * * (`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.').
Pursuant to the foregoing standards, we examine the record in a light most favorable to the prosecution to determine if the prosecution sufficiently proved beyond a reasonable doubt each element of the offense charged, and/or whether the jury "lost its way" in convicting appellant such that a manifest miscarriage of justice occurred.
Turning now to the specifics of appellant's fourth assignment of error, he contends that the prosecution failed to prove by sufficient evidence the elements of felony fleeing. As indicated infra, appellant further contends that the verdict was against the manifest weight of the evidence. To be more precise, appellant limits his challenge to the evidence regarding the enhancement of the offense from a misdemeanor to a felony.
As pertinent here, felony fleeing, or "failure to comply with an order or signal of a police officer" is proscribed by R.C. 2921.331(B) and (C)[2] as follows:
 (B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring his motor vehicle to a stop.
 (C) Whoever violates this section is guilty of failure to comply with an order or signal of a police officer. * * * A violation of division (B) of this section is a misdemeanor of the first degree, except that a violation of division (B) of this section is a felony of the fourth degree if the jury or judge as trier of fact finds any one of the following by proof beyond a reasonable doubt:
* * *
 (3) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property. [Emphasis added.]
Applying the foregoing to the facts of this case, appellant essentially concedes that the state proved all but one crucial element. Based upon the evidence as outlined below, the record clearly establishes that appellant operated a motor vehicle "so as willfully to elude or flee a police officer after receiving a visible or audible signal" from a police officer to bring his vehicle to a stop. The issue thus becomes whether the prosecution established, by the requisite standard of proof, that appellant's act of fleeing "caused a substantial risk of serious physical harm to persons or property."
The state presented as witnesses three police officers from the city of Whitehall.
Detective Dennis Allen testified that at approximately 3:00 p.m. on July 20, 1999, he was conducting surveillance of a house suspected to be a "narcotics location." According to the detective, this surveillance operation had been ongoing for some time. Allen noticed an unfamiliar car and ran a "standard registration check" on the vehicle.
The officer learned that the vehicle was registered to appellant. The registration check also indicated that appellant was on parole and the vehicle was to be seized. He observed three people leave the suspect premises and get into appellant's car. Appellant got into the driver's seat.
Detective Allen could not lawfully effectuate a traffic stop because he was in an unmarked vehicle. Therefore, he radioed marked cruisers for assistance. Allen followed appellant to Main Street, and two marked cruisers soon arrived.
Officer John Grebb pulled up directly behind appellant's car. Officer Terry McDowell pulled up behind Officer Grebb's cruiser.
Detective Allen testified that the officers discussed how best to make the traffic stop, particularly given appellant's status as a parolee. Of additional concern was the heavy rush hour traffic, both pedestrian and vehicular. Officer McDowell advised Grebb to wait until they had cleared a busy intersection at South Hamilton Road and East Main Street before attempting to pull appellant over.
Officer Grebb testified that he activated his beacon lights in an attempt to pull appellant over. Instead, appellant pulled into the center turn lane and accelerated rapidly. The officers pursued appellant on East Main Street at speeds of up to one hundred miles per hour. Appellant reached an entrance ramp for I-270, pulled into a grassy area, and came to a stop. Appellant jumped out of his car and fled into a nearby wooded area, where he was subsequently apprehended.
Testimony from the officers established that at the time of the chase, East Main Street had a significant amount of traffic. The area is a business district, with five lanes of traffic, several side streets, stop signs, traffic lights, and strip malls. According to the officers, the pursuit lasted through a stretch of East Main Street containing six traffic lights, two of which were red when appellant sped through them.
At one point during the pursuit, appellant weaved, drove down the center turn lane, and drove into oncoming traffic. Both McDowell and Grebb testified that they were very concerned about the possibility of a crash, given appellant's speed and reckless driving.
The officers estimated appellant's speed variously, from seventy to one hundred miles per hour. Their respective estimates were not entirely consistent, a point appellant emphasizes on appeal.
The jury viewed videotapes of the chase recorded by the cruisers' video equipment.
Appellant testified on his own behalf. He denied that he drove as fast as the three officers said he did. According to appellant, his speed never exceeded sixty miles per hour. He also denied running any red lights. Appellant opined that no one was at a substantial risk of serious physical harm because his vehicle, a 1994 Cadillac, was a large luxury car, incapable of being operated like a sport's car.
Given the state of this record, appellant's conviction was supported by sufficient evidence, and the conviction was not against the manifest weight of the evidence. As the factfinder, the jury made credibility determinations and reasonably resolved any inconsistencies in the evidence, to the minor extent such inconsistencies existed, in favor of the prosecution. Such resolution was properly within the jury's purview and will not be disturbed based upon this record.
Accordingly, the fourth assignment of error is overruled.
Appellant's remaining assignments of error challenge the trial court's imposition of the maximum sentence.
In his first assignment of error, appellant contends that the trial court abused its discretion in imposing the maximum penalty without complying with the sentencing mandates of R.C. 2929.12.
Pursuant to R.C. 2929.14(A)(4), in sentencing offenders for felonies of the fourth degree, a trial court has the discretion to impose a maximum prison term of eighteen months, which is the sentence appellant received. However, in imposing the maximum sentence, the trial court must first make certain findings in compliance with R.C. 2929.14(C), which provides, in pertinent part:
 * * * [T]he court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense * * * only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, * * * and upon certain repeat offenders.
As appellant observes, in making a determination that an offender "committed the worst form of the offense" and/or "pose[s] the greatest likelihood of committing future crimes," the trial court must engage in an analysis which includes consideration of certain enumerated factors set forth in several divisions of R.C. 2929.12.
R.C. 2929.12(B) sets forth factors which might indicate that the offender's conduct is "more serious than conduct normally constituting the offense." In toto, those factors are:
 (1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 (3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
 (4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
 (5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
 (6) The offender's relationship with the victim facilitated the offense.
 (7) The offender committed the offense for hire or as part of an organized criminal activity.
 (8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
Division (D) sets forth recidivism factors indicative of those offenders "who pose the greatest likelihood of committing future crimes," as follows:
 (1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing * * * or under post-release control * * * for an earlier offense.
 (2) The offender previously was adjudicated a delinquent child * * * or the offender has a history of criminal convictions.
 (3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child * * * or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
 (4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.
 (5) The offender shows no genuine remorse for the offense.
Turning again to the record before us, we look to discern whether the trial court did sufficiently comply with R.C. 2929.12.
In its judgment entry journalizing appellant's conviction and sentence, the trial court included the following language, in pertinent part:
 The Court has considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the factors set forth in R.C. 2929.12. In addition, the Court has weighed the factors as set forth in the applicable provisions of R.C. 2929.13 and R.C. 2929.14. * * *
 The Court hereby imposes the following sentence: an EIGHTEEN (18) MONTH SENTENCE AT THE OHIO DEPARTMENT OF REHABILITATION AND CORRECTIONS. The Court stated on the record its reasons for imposing this sentence. * * *
 After imposing sentence[,] the Court gave its finding and stated its reasons for the sentence as required by R.C. 2929.19(B)(2)(a)(b) and (c)(d) and (e).
In accord with the language of the entry, the record reveals the judge's lengthy and detailed "findings" and "reasons" upon which he based his imposition of the maximum sentence:
 [THE COURT] * * * Well, Mr. Hill, you came in here about a week ago and I told you that you were making a mistake of monumental proportions, or at least I tried to communicate that to you, and you basically paid no attention to anything I had to say. Then you sat on this witness stand and you told this jury who's trying you that you had been to prison, you were on post-release control, they were making you go to meetings once or twice a week and you had to report to your officers every so often and that that was just not fitting into your schedule so you stopped reporting.
 And then when the officer got ahold of you the day of this incident, if I understood your testimony, and told you if you didn't show up and report that day he was going to issue a warrant for your arrest, and the impression you left us with in your testimony was that wasn't going to happen that day, you weren't going to report that day, as if you were too busy.
 Then you tell us how you're over at this friend's house from 12:30 until 4:00 shooting pool and listening to music, not out earning a living, not doing stuff that is too important to ignore your supervising officer, but shooting pool and listening to music.
 You've got no driving privileges and you knew that, so you shouldn't have even been driving a car. You had no insurance on the car, so anybody you ran into out there, they were just stuck because you had no way of making good on any damage that you did, and you're basically telling this jury all this, and it's a nonexpansive question, you didn't have to tell them all of this. I'm wondering what kind of man sits here and thinks these are good things to tell a jury in his trial. You seem like an intelligent person, and yet doing things like this, I don't understand it.
 I haven't even gotten to the fleeing. This is rush hour traffic, East Main Street, and I'll give you the benefit of the doubt, let's say you never got over 60 or 65, you're in the turn lane going 60 miles an hour. * * * I think I'm a safe driver. I never once when I'm pulling into that left middle turn lane look in my rearview mirror on the left side because I'm watching the cars behind me. You're not expecting somebody coming 65 miles an hour up the middle of the road. * * * I don't check my left mirror because you might as well be looking for airplanes to fall out of the sky and land on you. You went through two red lights.
* * *
 Back when this plea was originally entered, had I known the full gravity of everything that was involved here as far as this chase and the number of people put at risk I never ever[,] ever would have agreed to one year in prison. This is about the worst form of the offense, rush hour traffic, speeds the police say approximated 90 or 100, you admit was 60 to 65. How old is your daughter?
[Appellant]: 11.
 THE COURT: What if she would have been crossing the street that day.
[Appellant]: She wouldn't have been.
THE COURT: Well, somebody's daughter might have been.
 Okay, you have been to prison twice, so therefore community control is not appropriate. This behavior is about the worst form of this offense, and your attitude during trial indicates to me you will probably just continue to behave the way you damn well please. [Tr. 183-187.]
The judge's dissertation, which by its extent and fervor clearly demonstrates the judge's careful consideration of the facts, more than satisfies the statutory requirements of R.C. 2929.12 et seq. The judge analyzed the applicable factors in making his determination that appellant's offense qualified as being of the "worst form" and that appellant posed a great likelihood of committing future offenses. Based upon the record before us, appellant has not demonstrated that the trial judge abused his discretion.
The first assignment of error is overruled.
In his second assignment of error, appellant argues that the trial court committed prejudicial error in failing to consider the factors set forth in R.C. 2921.331(C)(5)(b). The prosecution counters by noting that these factors were not included in the 1989 version of the statute under which appellant was indicted. The fleeing statute was amended, with an effective date of October 29, 1999, to require the sentencing court to consider, "along with the factors set forth in sections 2929.12 and 2929.13," nine specific factors:
(i) The duration of the pursuit;
(ii) The distance of the pursuit;
 (iii) The rate of speed at which the offender operated the motor vehicle during the pursuit;
 (iv) Whether the offender failed to stop for traffic lights or stop signs during the pursuit;
 (v) The number of traffic lights or stop signs for which the offender failed to stop during the pursuit;
 (vi) Whether the offender operated the motor vehicle during the pursuit without lighted lights during a time when lighted lights are required;
 (vii) Whether the offender committed a moving violation during the pursuit;
 (viii) The number of moving violations the offender committed during the pursuit;
 (ix) Any other relevant factors indicating that the offender's conduct is more serious than conduct normally constituting the offense.
R.C. 2921.331(C)(5)(b).
We agree with the prosecution that the trial court was not required to consider the specific factors listed in the amended fleeing statute. The amended legislation went into effect after appellant's illegal conduct occurred.
Significantly, the revised statute also increases the degree of the offense to a felony of the third degree and, accordingly, carries a substantially greater penalty. R.C. 2921.331(C)(5). Pursuant to R.C.2929.14(A)(3), a third-degree felony offender faces a maximum prison term of five years. Again, appellant was convicted and sentenced under the prior statute of a fourth-degree felony.
We find no error in the trial court's purported failure to apply these factors. Even if the court were required to do so, the court's detailed consideration of the R.C. 2929.12 factors, as discussed at length above in the first assignment of error, effectively included consideration of the now-statutory factors.
Finally, we note that the transcript reveals that the trial judge and both counsel acknowledged before trial commenced that the offense, that was in effect at the time of appellant's unlawful conduct, was a fourth-degree felony. Defense counsel made no mention of or otherwise objected to trying the case under the statute as it existed on the date of the incident.
The second assignment of error is overruled.
Finally, by his third assignment of error, appellant essentially argues that the trial court abused its discretion by imposing a "retaliatory" sentence, based upon the judge's bias and other "illicit factors," after appellant withdrew his guilty plea and reasserted his right to a jury trial.
Appellant first notes the following comments by the judge after appellant withdrew his guilty plea and prior to commencement of the trial:
 Okay, record should reflect sometime, the file will show and previous record will reflect, you entered a guilty plea in this case. Apparently my recollection is there was some sort of a parole violation that was pending out there and there was some thought that you might be revoked on your parole. Apparently that issue has now come and gone and your parole was not revoked.
 In order to facilitate this plea we reach an agreement that I would allow you to withdraw your guilty plea if, in fact, the Parole Authority did not revoke your parole on the other case. And I stand ready to obviously stand good on my word to allow you to withdraw the plea.
* * *
 Mr. Hill, you have not asked me for my advice, but I'm going to stick my nose in here and give you some advice. I think you're making a mistake of monumental I don't know how to describe it. I was given the facts of this case at the time I took the plea. I was told the facts * * * back in chambers prior to taking your plea.
 My understanding is that you were driving a vehicle, and there isn't any issue about the fact that you were driving it, there isn't any issue about the fact the police were chasing you, and there isn't any issue about the fact the chase involved some degree of high speed. My understanding the case will be tried on some theory there was no danger of property damage or injury.
 Now, if you can get some jury to buy that, good for you and good for your lawyer. I would think the chances of that happening are about as slim as could be. So in my mind you're making a mistake here.
 Mr. Hill, let me add one more thing I think here I failed to add. I told your lawyer, I assume he told you, that factored into your plea was some reduction in the sentence I thought you deserved. I reward people that admit their guilt and take responsibility for their behavior. If you go to trial[,] I don't want you going to trial thinking the sentence would be the same if you're convicted at trial. The sentence may be different. [Tr. 4-6. Emphasis added.]
To the latter comment by the judge, appellant responded, "Yes, sir, I understand." (Tr. at 6.)
Appellant also reiterates the judge's lengthy commentary at sentencing, that is quoted above in our discussion of the first assignment of error, as indicative of the trial judge's purported "bias" toward him.
In State v. Weber (June 30, 1999), Franklin App. No. 98AP-1230, unreported, this court stated:
 A defendant may not be sentenced more severely simply because she exercised her right to trial. Columbus v. Bee (1979), 67 Ohio App.2d 65 * * *. In Alabama v. Smith
(1989), 490 U.S. 794 * * *, the Court held that where a trial judge imposes a more severe sentence after retrial than that which was previously imposed upon a guilty plea, there is no presumption of vindictiveness except under circumstances in which there is a reasonable likelihood that the increase in sentence is the product of vindictiveness on the part of the sentencing judge because, even when the same judge imposes both sentences, the judge has considerably more information available after a trial than after a plea and may gather "a fuller appreciation of the nature and extent of the crimes charged" during the course of the trial. Smith at 801. [Emphasis added.]
The trial judge perhaps could have chosen more prudent words, particularly the reference to "rewarding" defendants who "admit their guilt and take responsibility for their behavior." However, based upon a careful review of the record in this case, we cannot say that appellant has demonstrated that the trial judge was biased or that he meted out a retaliatory sentence as a result of appellant's invoking his right to a jury trial. The judge unequivocally stated his many reasons for imposing the maximum sentence and, given the above-quoted language in Weber, we cannot find an abuse of discretion.
The third assignment of error is overruled.
Having overruled the assignments of error, the judgment of the trial court is affirmed.
GEORGE and BROWN, JJ., concur.
GEORGE, J., retired, of the Ninth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] While the prosecution's brief indicates that appellant was also indicted on a fifth-degree felony count of receiving stolen property, the indictment reveals no such charge against Mr. Hill. Instead, the indictment charges only "Kevin D. Trapp" with the receiving stolen property offense.
[2] As indicated infra, appellant was prosecuted for an offense committed in July 1999; the fleeing statute in effect at that time was that which had been effective since its last amendment in November 1989. On October 29, 1999, subsequent to appellant's indictment, but prior to his conviction and sentencing, a revised amendment of the statute went into effect. For purposes of this assignment of error, the elements of the offense at issue here are substantively the same in both versions of the statute. However, we address issues related to the potential applicability of certain portions of the current statute in appellant's second assignment of error.