DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Pickaway County Common Pleas Court judgment of conviction and sentence. A jury found David R. Scott, defendant below and appellant herein, guilty of theft in violation of R.C. 2913.02. Appellant assigns the following errors for review and determination:
FIRST ASSIGNMENT OF ERROR:
"THE TRIAL COURT DENIED MR. SCOTT DUE PROCESS, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, BY RETALIATING AGAINST MR. SCOTT FOR EXERCISING HIS RIGHT TO A JURY TRIAL."
SECOND ASSIGNMENT OF ERROR:
"THE TRIAL COURT DENIED MR. SCOTT DUE PROCESS OF LAW AND THE RIGHT TO A JURY TRIAL, IN VIOLATION OF THE FIFTH, SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, BY SENTENCING MR. SCOTT TO PRISON BASED ON FACTS NOT FOUND BY THE JURY NOR ADMITTED BY MR. SCOTT."
 {¶ 2} On February 28, 2005, Lela Riegel visited the Circleville Wal-Mart store to shop. After she finished and returned to her car, she began to put her purchases into the trunk. At this point another vehicle drove up behind her and a man reached out to snatch her purse from the shopping cart's child seat.
 {¶ 3} Riegel ran after the car, but her effort was unsuccessful. She then returned to the store and contacted authorities. The vehicle was located shortly thereafter and Riegel identified appellant as the culprit. The purse was later discovered in a dumpster at another location.
 {¶ 4} The Pickaway County Grand Jury returned an indictment charging appellant with theft in violation of R.C. 2913.02. Afterward, the prosecution offered to recommend a six or seven month prison sentence in exchange for appellant's guilty plea.[1] Appellant refused the offers. Prior to the start of trial, appellant also informed the court that he did not want defense counsel "near" him. Thus, the matter proceeded to trial with appellant acting pro se.[2]
 {¶ 5} Riegel testified that appellant stole her purse. The defense offered no evidence in rebuttal and, during closing argument, appellant delivered the following declaration:
"I just — I am guilty. I am guilty. I want to apologize to Mrs. Riegel. I am already in prison right now, that is why I am wearing — dressed like this. I am just, I apologize, I'm embarrassed. That is pretty much it. I am sorry. I need help. I am on drugs."
 {¶ 6} Not surprisingly, the jury returned a guilty verdict. The trial court sentenced appellant to the maximum allowable prison sentence of twelve months. Additionally, the court ordered that sentence to be served consecutively to a sentence appellant was currently serving for an offense committed in Scioto County. This appeal followed.
 I {¶ 7} In his first assignment of error appellant asserts that his sentence is unconstitutional because he received the maximum sentence in retaliation for his decision to have a trial rather than to accept the prosecution's plea offer.[3]
 {¶ 8} We begin our analysis by noting our recent decision inState v. Morris, 159 Ohio App.3d 775, 825 N.E.2d 637,2005-Ohio-962, wherein we wrote:
"It is axiomatic that `a defendant is guaranteed the right to a trial and should never be punished for exercising that right.'State v. O'Dell (1989), 45 Ohio St.3d 140, 543 N.E.2d 1220, at paragraph two of the syllabus. Any increase in the sentence based upon the defendant's decision to stand on his right to put the government to its proof rather than plead guilty is improper.State v. Scalf (1998), 126 Ohio App.3d 614, 621,710 N.E.2d 1206; Columbus v. Bee (1979), 67 Ohio App.2d 65, 77,425 N.E.2d 409. If courts could punish defendants for exercising their constitutional right to a jury trial, the right would be impaired by the chilling effect. Scalf at 621; see, also, NorthCarolina v. Pearce (1969), 395 U.S. 711, 89 S.Ct. 2072,23 L.Ed.2d 656. This prohibition on increased punishment applies `no matter how overwhelming the evidence of [defendant's] guilt.'Scalf at 621, quoting United States v. Derrick (C.A.6, 1975),519 F.2d 1, 3. In addition, a court must avoid creating the appearance that it enhanced a defendant's sentence because he elected to go to trial. Scalf, 126 Ohio App.3d at 621; UnitedStates v. Hutchings (C.A.2, 1985), 757 F.2d 11, 14; UnitedStates v. Stockwell (C.A.9, 1973), 472 F.2d 1186, 1187. When the court makes statements that `give rise to the inference that [the] defendant may have been punished more severely because of his assertion of the right to trial by jury,' we must vacate the sentence, State v. Hobbs, Cuyahoga App. No. 81533, 2003-Ohio-4338, at ¶ 71, unless the record also contains an unequivocal statement that the defendant's decision to go to trial was not considered in imposing the sentence. Scalf,126 Ohio App.3d at 621, citing Hutchings, supra. `Absent such an unequivocal statement, the sentence will be reversed and the matter remanded for resentencing.' Id.; United States v.Medina-Cervantes (C.A.9, 1982), 690 F.2d 715, 716-717." (Some secondary citations omitted.) Id. at ¶¶ 12-13.
In Morris, we found extensive evidence to show that the trial court expressed displeasure with the defendant's refusal to accept a plea offer and insistence on a jury trial.2005-Ohio-962, at ¶ 14. Moreover, nothing in the record revealed any "unequivocal statement" that the trial court did not enhance the sentence based on the defendant's exercise of his right to a trial by jury. Id. at ¶ 15.
 {¶ 9} Appellant argues in the case sub judice that Morris
is virtually identical to the facts and circumstances presently before us. He cites several portions of the transcript to support his argument that the trial court was angry about his decision to proceed to trial and imposed the maximum penalty as punishment for that decision. We disagree with appellant.
 {¶ 10} Our review reveals several salient distinctions between Morris and the case at bar. First, we note appellant's startling admission of guilt during closing argument. This admission is important because it places the case beyond the realm of harm that protections in the Ohio and United States Constitution are designed to guard against. Indeed, the bedrock of our system rests on the notion that defendants enjoy a presumption of innocence, see generally State v. Hafer (2001),144 Ohio App.3d 345, 348, 760 N.E.2d 56; State v. LeMaster
(Dec. 26, 2001), Pickaway 01CA10, and that guilt must be established beyond a reasonable doubt. See R.C. 2901.05(A); Inre Winship (1970), 397 U.S. 358, 361, 25 L.Ed.2d 368,90 S.Ct 1068. Courts must take these principles very seriously and, as evidenced by Morris, we will zealously enforce them. Thus, even if a criminal defendant has no evidence to present at trial, and even if the prosecution's evidence of guilt is overwhelming, a defendant has every right to demand that the State establish his guilt beyond a reasonable doubt. A trial court may not punish a defendant simply for exercising his right, even if no question exists from the evidence concerning the defendant's guilt.
 {¶ 11} A defendant may, however, waive his constitutional rights. Here, appellant, in essence, waived his right to a trial when he freely and voluntarily admitted his guilt to the jury in open court. This situation can be contrasted to Morris in which the defendant did not admit his guilt and was punished for exercising his right to put the State to its burden of proof. Here, no need existed to put the State to its burden of proof because appellant freely and voluntarily admitted his guilt.
 {¶ 12} Another important distinction between the instant case and Morris is the source of the trial court's displeasure. InMorris, the trial court specifically cited appellant's refusal to plead guilty as an aggravating factor when it imposed sentence. 2005-Ohio-962, at ¶ 14. Here, however, the trial court's posture was considerably more nuanced:
"THE COURT: Well I note that, it is in the record. The fact ofthe matter is, this is probably the first time in my twentysome years I ever heard a defendant in front of a jury admit heis guilty. So you sit here and you wonder why are we here, you know. It is like going out and buying a car. If I decide I want to buy a car and get a car, say I buy that car then all I do is haggle over the price, I have already said I am going to buy a car. Well, you come in court and you say I did it but I won't accept six months, seven or eight months or whatever the state is recommending, then there's no option but to go to trial." (Emphasis added.)
We agree with appellant that the trial court may have shown some degree of displeasure, but the source stems not from appellant's decision to reject a plea agreement and proceed to trial, but at appellant's insistence to proceed to trial and then admit at the conclusion of the trial that he was indeed guilty. Again, this is different from Morris in which the trial court expressed anger at the defendant's decision to exercise his constitutional right to a trial. To put the State to its burden of proof when the defendant eventually admits his guilt is simply a "show trial" that needlessly wastes the court's time and resources.
 {¶ 13} The final and most important distinction between the instant case and Morris are the trial court's unequivocal statements to indicate that it imposed the maximum sentence because of appellant's extensive criminal record, not because appellant decided to go to trial. At sentencing the trial court stated:
"* * * The court is of the opinion, Mr. Scott, that based on your lengthy history, criminal history, that you do pose a great likelihood of what we call recidivism, which means re-offend. And the person involved with you, the woman, I believe ended up getting probation. She admitted it and ended up with probation, but she didn't have any where [sic] near the record you have got and been through the system yourself. Sometimes, it is to that point where it is only a felony of the fifth degree, you canonly be warehoused for a certain period of time, which is twelvemonths, but in your case you are deserving of that because ofyour record. So it will be the order of the court for this offense the court finds that he poses the greatest likelihood of recidivism based on your lengthy criminal history, and will order that you be confined to state prison for the maximum, which is twelve months * * *" (Emphasis added.)
This explanation makes clear that the court's reason for a maximum sentence is appellant's prior criminal record, not his decision to go to trial. Indeed, the court noted that a minimum sentence is "not justified" in light of appellant's extensive criminal background. The record amply supports this decision.
 {¶ 14} Although we find no pre-sentence investigation report in the record before us, appellant admitted during a conference in chambers that he had been involved in two previous trials — "one trial with a judge and one jury trial." He also revealed his involvement in "four or five" other plea agreement situations. Finally, appellant admitted during sentencing that he perpetrated another robbery while "out on bond" in the instant case. The trial court obviously concluded, and correctly so, that the only way to protect property from appellant is to keep him incarcerated as long as possible. Again, that conclusion is amply supported in the record.
 {¶ 15} Therefore, in view of the trial court's unequivocal explanation that it imposed the twelve month sentence due to appellant's extensive criminal record, as well as references in the transcript to substantiate the extent of appellant's background, we find no error in the court's decision to impose a maximum sentence.
 {¶ 16} Accordingly, based upon the foregoing reasons we hereby overrule appellant's first assignment of error.
 II {¶ 17} Appellant asserts in his second assignment of error that his sentence is unconstitutional based on State v. Foster,109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856.
 {¶ 18} The trial court, both at sentencing and in its sentencing entry, explicitly referenced R.C. 2929.14(C) to impose the maximum sentence. The Ohio Supreme Court, subsequent to the trial court's judgment, held in Foster, supra at paragraph one of the syllabus, that R.C. 2929.14(C) is unconstitutional. The court also held that when a sentence is based on an unconstitutional statute, the proper remedy is to vacate that sentence and remand the case for a new sentencing hearing. SeeFoster, supra at ¶ 103.
 {¶ 19} Accordingly, based upon the foregoing reasons we sustain appellant's second assignment of error.
 {¶ 20} In summary, having overruled appellant's first assignment of error and sustained appellant's second assignment of error, we hereby affirm in part and reverse in part the trial court's judgment and remand the case for re-sentencing in light of Foster.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND CASE REMANDEDFOR RE-SENTENCING.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed in part, reversed in part, and that the case be remanded for re-sentencing. Appellant shall recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. McFarland, J.: Concur in Judgment Opinion.
[1] The exact terms of the proposed plea agreements are not entirely clear. We take our understanding from several vague references from a conference held in chambers prior to the commencement of trial.
[2] The conflict between appellant and his trial counsel apparently stemmed from (1) trial counsel's failure to obtain a "transcript of the preliminary hearing" in the Circleville Municipal Court and (2) counsel's representation of Vickie Melvin, the driver of the vehicle at the time appellant snatched the purse. Appellant requested a continuance to obtain new counsel, but the court denied his request. Appellant concedes in his brief he "waived his right to counsel" and elected to proceed pro se.
[3] Typically, theft is a first degree misdemeanor unless the property involved includes a credit card and/or pre-printed check. In that case the offense is elevated to a fifth-degree felony. See R.C. 2913.02(B)(2) R.C. 2913.71(A)(B). The jury returned a special verdict in this case and found that a credit card and pre-printed checks were among the contents of the stolen purse. Thus, the available prison sentence for this offense ranged from a six month minimum to a twelve month maximum. See R.C. 2929.14(A)(5).