OPINION
{¶ 1} This matter comes for consideration upon the record in the trial court and the parties' briefs. Appellant Timothy Mayle appeals the decision of the Carroll County Court of Common Pleas convicting him of one count of Theft in violation of R.C. 2913.02 (A)(1), a felony of the fourth degree and one count of Failure to Comply with Order of a Police Officer in violation of R.C. 2921.331(B), a felony of the fourth degree, and sentencing him to seventeen months on each count to run consecutively.
 {¶ 2} Mayle challenges his conviction on three grounds. First, he claims the trial court erred by failing to instruct the jury on the unauthorized use of a motor vehicle. A charge on a lesser-included offense is required only where the evidence at trial would reasonably support an acquittal on the greater crime charged and a conviction on the lesser-included offense. Because the jury had no evidence, credible or otherwise, to rely upon with regard to the lesser-included offense, we conclude that the trial court did not err in refusing to give the instruction.
 {¶ 3} Second, Mayle asserts his conviction was against the manifest weight of the evidence. However, in light of all the testimony put into the record by the state, we cannot say the jury clearly lost its way in finding Mayle guilty of theft.
 {¶ 4} Finally, he maintains that he was punished by the trial court for exercising his right to a trial by jury. Because Mayle has failed to offer proof of any vindictiveness on the part of the trial court, we conclude his third and final claim meritless and affirm the judgment of the trial court.
 Facts {¶ 5} On January 5, 2004, Mayle was indicted by a Grand Jury on three counts. Count One alleged theft of a motor vehicle in violation of R.C.2913.02 (A)(1), a felony of the fourth degree. Count two involved Mayle's failure to comply with an order of a Police Officer in violation of R.C.2921.331 (B), a felony of the fourth degree. Finally, count three alleged theft of a box of Christmas presents located in the stolen vehicle in violation of R.C. 2913.02, a felony of the fifth degree.
 {¶ 6} The matter went to trial before a jury and Mayle was convicted of theft and failure to comply with an officer's order. On April 20, 2004 Mayle was sentenced to a term of seventeen months on Count One and seventeen months on Count Two, to run consecutively.
 Manifest Weight {¶ 7} In his second assignment of error, which will be addressed first in the interest of clarity, Mayle claims:
 {¶ 8} "The conviction of Defendant-Appellant must be reversed for the reason that it was against the manifest weight of the evidence."
 {¶ 9} When reviewing a manifest weight claim, this court's role is to examine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction."State v. Getsy (1998), 84 Ohio St.3d 180, 193. To do this, we sit as the "thirteenth juror", examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983) 20 Ohio App.3d 172, 175. "`The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id. at 387, quoting Martin at 175.
 {¶ 10} Here, Mayle argues that his conviction must be reversed as being against the manifest weight of the evidence simply because the state offered no direct physical proof that he committed the crime. However, the Ohio Supreme Court has stated:
 {¶ 11} "Convictions based on circumstantial evidence, rather than direct evidence, do not require any greater review." * * * [C]ircumstantial evidence may be more certain, satisfying and persuasive than direct evidence." State v. Richey (1992), 64 Ohio St.3d 353, 363.
 {¶ 12} The State put on evidence consisting of testimony from the victims, Mr. Gandee and Mr. Marteney; the bartender working at the Corner Bar the evening of the crime; officers which were called to investigate the crime; the owner of the home where Mayle was staying; and, finally the owner's son. Their testimony established the following:
 {¶ 13} Gandee lived in a house located across the street from the Corner Bar. Gandee testified that his son-in-law came to his house on Christmas Eve around 11:30 to load up presents in his van that were being stored at the house. Marteney loaded all of the packages and then let the van idle in the driveway so it would warm up. Marteney went inside, but soon after, saw somebody pass by the window. Gandee looked out the back window and saw someone going behind his shed, while Marteney stepped outside the front door. Marteney then said, "Hey, they're stealing my van."
 {¶ 14} Gandee got into his truck and followed the van, but the van was going too fast to keep up. Because the roads were so slippery and he didn't want to wreck his truck, Gandee decided to turn around and go home. When Gandee arrived home he checked outside for tracks in the snow. He found two sets of tracks coming from the Corner Bar. One set went back towards his shed and one set led to where the van had been parked. Gandee followed the tracks to the Corner Bar. He went in and asked the bartender if she saw two men leave about fifteen minutes prior. She said "yes" and later testified that she saw Mayle and another man leave together around midnight.
 {¶ 15} While all this was going on, Officer Carlisle, employed by the Minerva Police Department, was patrolling the area and noticed a van traveling very fast for a 25 m.p.h. speed zone. The officer followed the van around several turns. He lost sight of it a few times but followed the tracks in the snow. He then received a call from dispatch that a van had just been stolen. As he continued driving, he noticed the same van pull out of a business called Ashland, a fueling station for rigs, semis, and buses. He got directly behind the van, since it matched the description of the stolen van, and activated his lights and siren. The driver of the van kept going but eventually pulled the van over to the side of the road. Officer Carlisle told the driver to get out of the vehicle. The driver got out of the passenger side of the vehicle and took off running down an embankment. The officer checked to see if anyone else was in the vehicle and then went after the driver.
 {¶ 16} The officer had a flashlight and could see that the person was wearing dark clothes. The suspect ran ahead through a wooded area so the officer followed the tracks left in the snow. The tracks lead up to a creek and ended. The officer decided not to go into the water.
 {¶ 17} While the foot chase was still going on, Officer Barker, from the Carroll County Police Department, had been called to assist. The officer was informed of the direction where the suspect was heading. When she arrived in the general area, she came across footprints in a field leading up to Leisure Road. She met up with two other officers who had checked with Officer Carlisle to see if the tracks were similar. The officers then backtracked to the creek to see where the tracks started. The officers found one set of tracks leading from the spot where the van had pulled off the road. The officers followed the tracks up the steps and to the back door of 2017 Leisure Road.
 {¶ 18} After making several attempts at knocking and pounding on the door with no response, the officers requested and obtained a search warrant. The officers once again tried knocking but still got no response so they pried the door open. They first encountered David Smith, Jr. who appeared to have just woken up. They asked if anyone else was home and he pointed to the other bedroom. The officers found Mayle lying under a blanket. The officers told him to get up but he didn't listen. Mayle pulled a hand from under the blanket and "flipped off" the officers. The officers then yanked the blanket off Mayle. The officers got Mayle out of his bed and informed him that they were looking for a car thief. Mayle responded by saying, "'f'you, I want a lawyer". Mayle continued to be belligerent and repeatedly kept screaming to Smith, Jr. not to "talk to anybody, don't say anything." Mayle was then arrested and taken to the station.
 {¶ 19} The police officers then searched the house for other items listed in the search warrant. On the way down to the basement, the officers found a wet sock on the steps. When they got to the basement, the washing machine was running. Inside, the officers found a leather coat whose pockets contained papers with Mayle's name on them. There was also a pair of wet jeans, a sweatshirt, and two pairs of black Adidas running shoes. Smith Jr. told the police that one of the pairs was his and that they were his only good pair of shoes. So, the officers gave the shoes back to him. The officers kept the other pair in their possession since it appeared to have the same tread patterns as the footprints outside.
 {¶ 20} Mayle now claims that his conviction is against the manifest weight of the evidence because there was a lack of physical evidence. He additionally claims that it was never scientifically proven that the Adidas shoes made the footprints outside. Finally, Mayle argues that Smith, Jr. shouldn't have noticed that something was wrong that evening if Mayle had in fact stolen the van and hiked across a creek. Instead Smith, Jr. testified that Mayle was nicer than usual that evening.
 {¶ 21} In light of all the testimony put into the record by the State, we conclude that the jury clearly did not lose its way in finding Mayle guilty of theft. This assignment of error is meritless.
 Lesser Included Offense {¶ 22} As his next assignment of error, Mayle claims:
 {¶ 23} "The trial court did err (sic) prejudice (sic) Defendant-Appellant by failing to instruct on Unauthorized use of a Motor Vehicle."
 {¶ 24} Pursuant to R.C. 2945.74 and Crim.R. 31(C), when supported by the evidence at trial, the jury must be instructed on lesser included offenses. State v. Deem (1988), 40 Ohio St.3d 205, paragraph one of the syllabus. R.C. 2945.74 provides, in pertinent part:
 {¶ 25} "When the indictment or information charges an offense, including different degrees, or if other offenses are included within the offense charged, the jury may find the defendant not guilty of the degree charged but guilty of an inferior degree thereof or lesser included offense."
 {¶ 26} The Ohio Supreme Court of Ohio has adopted a two-prong test to determine whether a jury instruction on a lesser included offense is necessary. First, the trial court must determine whether the offense on which the instruction is requested is a lesser included offense of the crime charged. State v. Kidder (1987), 32 Ohio St.3d 279, 280-281; Statev. Coulter (1992), 75 Ohio App.3d 219, 225. Secondly, the court must determine whether the evidence supports an instruction on the lesser included offenses. Kidder at 281.
 {¶ 27} In Deem, the Supreme Court set forth a three-part test to determine whether an offense is a lesser included offense of another offense:
 {¶ 28} "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense. (citation omitted)." Id. at paragraph three of the syllabus. See, also, State v. Wilkins (1980),64 Ohio St.2d 382, 384.
 {¶ 29} Mayle was charged and convicted of theft in violation of 2913.02:
 {¶ 30} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 31} "(1) Without the consent of the owner or person authorized to give consent"
 {¶ 32} However, he claims that the jury should have also been instructed on the unauthorized use of a motor vehicle under R.C.2913.03:
 {¶ 33} "(A) No person shall knowingly use or operate an aircraft, motor vehicle, motorcycle, motorboat, or other motor-propelled vehicle without the consent of the owner or person authorized to give consent."
 {¶ 34} Although the wording of the two statutes does not precisely match, the Supreme Court has suggested that a perfect fit is not necessary. In State v. Thomas (1988), 40 Ohio St.3d 213, 216-17, the companion case to Deem, the Court said this about comparing the elements of the offenses:
 {¶ 35} "This test is not a word game to be performed by rote by matching the words chosen by the legislature to define criminal offenses. Some offenses * * * lend themselves to such a simple matching test; others do not. * * * * The proper overall focus is on the nature and circumstances of the offenses as defined, rather than on the precise words used to define them."
 {¶ 36} In applying the Supreme Court's standard, it appears that every element of the unauthorized use offense is contained within the theft of a motor vehicle offense. The greater theft offense includes an additional element: that of the purpose or specific intention to deprive the owner of the vehicle. Moreover, it appears that one cannot commit the offense of theft of a motor vehicle without also committing the offense of unauthorized use of that vehicle.
 {¶ 37} Many courts have agreed and found that the latter is a lesser included offense of theft when a motor vehicle is involved. See State v.Whited (Oct. 24, 2003) 2d Dist. No. 02CA38; State v. Hill (Jan. 17, 2002), 5th Dist. No. 98CA67; State v. Young (May 30, 2002), 8th Dist. No. 79243; State v. Gales (Nov. 22, 2000), 9th Dist. No. 00CA007541;State v. Fatica (Aug. 15, 2003), 11th Dist. No. 2002-G-2434; State v.Moore (Nov. 24, 2003), 12th Dist. No. CA2002-12-307.
 {¶ 38} This court must now look to see if an instruction concerning the lesser included offense should have been given. A charge on a lesser-included offense is required only where the evidence at trial would reasonably support an acquittal on the greater crime charged and a conviction on the lesser-included offense. State v. Thomas (1988),40 Ohio St.3d 213, paragraph two of the syllabus. This rule, as applied to this case, would require that an instruction on unauthorized use of a motor vehicle be given only if the jury could have reasonably concluded that Mayle did not have the purpose to deprive the victim of his van.
 {¶ 39} Mayle claims that reasonable minds could conclude that he had no intention of permanently depriving the victims of their vehicle, presumably because the van was abandoned by the creek. Mayle has offered no other explanation as to why he believes he deserved the additional instructions.
 {¶ 40} However, this very argument has been struck down by the Third District in State v. Houseman (1990), 70 Ohio App.3d 499 where the defendant was involved in a high speed chase with the police, which resulted in the defendant crashing the vehicle. After the crash, the defendant got out of the car and escaped through a nearby field. The defendant then argued that since he abandoned the stolen vehicle, he had no intent to permanently deprive the owner of possession of the vehicle. Therefore, he should have received an instruction on the lesser included offense. The Third District opined:
 {¶ 41} "It would not have been reasonable for the jury to find against the state on the element of purpose to deprive the owner of property. It is evident from the events occurring that appellant intended to use the truck to escape. The fact that he was unsuccessful in using the Dodd truck to escape because he wrecked it in the attempt does not mean the jury could have reasonably determined this element of the offense was not proven by the state." Id. at 506.
 {¶ 42} In the present case, the defendant has simply put on no evidence that he had any intent to return the van. The fact that he abandoned the van after being chased by police is wholly irrelevant. Consequently, we conclude that the trial court did not err in refusing to give the instruction because the jury had no evidence, credible or otherwise, to rely upon. This assignment of error is meritless.
 Punishment for Exercising Right to Jury Trial {¶ 43} In his final assignment of error, Mayle claims:
 {¶ 44} "The sentence imposed herein must be set aside and the matter remanded to the trial court for re-imposition of sentence for the reason that Defendant-Appellant was punished and given an increased sentence for exercising his right of trial by jury in violation of his right to due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution."
 {¶ 45} A defendant should never be punished for exercising his right to trial or refusing to enter into a plea agreement. State v. O'Dell
(1989), 45 Ohio St.3d 140, paragraph two of the syllabus; Columbus v.Bee (1979), 67 Ohio App.2d 65, 75. Such a punishment would impair the constitutional right to a trial by creating a chilling effect upon a defendant's ability to exercise his constitutional right. State v. Scalf
(1998), 126 Ohio App.3d 614, 621, quoting United States v. Stockwell
(C.A.9, 1973), 472 F.2d 1186, 1187. Accordingly, a trial court may not augment a sentence because a defendant chooses to force the government to prove his guilt, "'no matter how overwhelming the evidence of [defendant's] guilt.'" Id. at 620, quoting United States v. Derrick
(C.A.6, 1975), 519 F.2d 1, 3.
 {¶ 46} But there are legitimate reasons why a trial court may sentence a defendant more harshly after a trial on the merits than it may have after a guilty plea. First, the United States Supreme Court has recognized the propriety of offering lenient sentences in exchange for a guilty plea. See Corbitt v. New Jersey (1978), 439 U.S. 212, 221-224. It is proper to offer a more lenient sentence in exchange for a guilty plea because a defendant's acknowledgement of guilt has shown a willingness to assume responsibility for his conduct and has taken the first step toward rehabilitation. Brady v. United States (1970), 397 U.S. 742, 753. Second, a trial court knows more details about the facts of the case, the flavor of the event, and its impact upon the victims after a trial on the merits than it would after a guilty plea. Derrick at 4. This "more real and accurate appraisal of the circumstances which brought the defendant to the bar of justice" will "almost inevitably * * * affect the judge's consideration of what penalty appears most appropriate." Id. Accordingly, the fact that the sentence imposed after trial is greater than the sentence the State offered to recommend in exchange for a guilty plea does not demonstrate that the trial court acted improperly.
 {¶ 47} In this case, the language cited by Mayle as proof that the trial court was punishing him for exercising his right to a jury trial was taken out of context. When read in conjunction with the rest of the trial court's explanation, it is apparent that the trial court was simply following the mandates of Senate Bill 2. The following are the trial court's comments in their entirety:
 {¶ 48} "You do have an extensive criminal history dating back, as I see it off the pre-sentence report, to 1987 with a couple of serious, extremely serious offenses, the aggravated robbery being one of them. Obviously, if this were your first brush with the criminal justice system, much of what Mr. Gartrell has floated to the court would have some validity, but I am also cognizant of the fact that there is a parole holder on you and that the parole authorities are apparently in the process of, or I presume will commence, some proceedings to terminate your parole and re-impose one of the existing sentences out here. That is a significant factor in the court's thinking because obviously there is a need because of your criminal history to punish you for these offenses as well as to protect the public from further criminal activity by you, much less than maximum sentences in this case, considering the fact that you have a prior prison term served and are currently on parole would seriously demean the seriousness of your conduct. I guess hindsight isalways the best teacher. I know at one time there was a plea offer on thetable for I believe a flat six months which would have left you with twomonths on a plea vs. as you say taking it to the box and gambling withthe jury and uh you know the jury has spoken and taking these sentencingfactors into consideration, the court does not find you amenable to localcommunity control sanctions * * *"
 {¶ 49} It appears from the trial court's statements that, although the court was aware that Mayle had been offered a shorter sentence, after reviewing Mayle's PSI and applying the requisite statutory factors, it had no choice but to impose a sentence greater than that offered in the initial plea bargain. Because Mayle has offered no proof of any vindictiveness on the part of the trial court, this assignment of error is also meritless. Accordingly, the judgment of the trial court is affirmed.
Donofrio, P.J., concurs.
Waite, J., concurs.