[Cite as *State v. Tellington*, 2011-Ohio-3405.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 10 MA 139 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| JOHNATHAN TELLINGTON, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:　　　　Criminal Appeal from Common Pleas
　　　　　　　　　　　　　　　　　　　Court, Case No. 09 CR 1254A.


JUDGMENT:　　　　　　　　　　　　　Affirmed.


APPEARANCES:
For Plaintiff-Appellee:　　　　　　　　Attorney Paul J. Gains
　　　　　　　　　　　　　　　　　　　Prosecuting Attorney
　　　　　　　　　　　　　　　　　　　Attorney Ralph M. Rivera
　　　　　　　　　　　　　　　　　　　Assistant Prosecuting Attorney
　　　　　　　　　　　　　　　　　　　21 W. Boardman St., 6th Floor
　　　　　　　　　　　　　　　　　　　Youngstown, OH　44503

For Defendant-Appellant:　　　　　　　Attorney Louis DeFabio
　　　　　　　　　　　　　　　　　　　4822 Market Street, Suite 220
　　　　　　　　　　　　　　　　　　　Youngstown, OH　44512


JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich

Dated: June 24, 2011

DeGenaro, J.

**{¶1}** Defendant-Appellant, Johnathan Tellington, appeals the July 26, 2010 judgment of the Mahoning County Court of Common Pleas convicting him of one count of aggravated robbery with a firearm specification and sentencing him accordingly. On appeal, Tellington argues that his plea was not knowing, voluntary and intelligent and that his sentence was erroneous.

**{¶2}** Upon review, Tellington's arguments are meritless. The trial court fully complied with Crim.R. 11 in accepting Tellington's guilty plea and Tellington's sentence was not an abuse of discretion or contrary to law. Accordingly, the judgment of the trial court is affirmed.

### Facts and Procedural History

**{¶3}** On December 3, 2009, Tellington was indicted by the Mahoning County Grand Jury on one count of aggravated robbery (R.C 2911.11(A)(1)(C)), a first-degree felony, and a R.C. 2941.145(A) firearm specification. Along with co-defendant, Damon L. Williams, Tellington was accused of robbing an elderly woman of her purse at gunpoint as she exited a Youngstown check-cashing business. Tellington initially entered a not guilty plea and counsel was appointed to represent him.

**{¶4}** The case proceeded to trial. Towards the end of the State's case, Tellington and Williams decided to plead guilty to the charges in the indictment. This was not a negotiated plea agreement as the State made no promises in consideration of the guilty plea.

**{¶5}** The trial court held a joint Criminal Rule 11 plea hearing for both men after confirming with the defense attorneys and the prosecutor that there was no objection to the joint plea hearing. The trial court engaged in a colloquy with Tellington regarding the rights he would give up by pleading guilty. At the end of the hearing, the court accepted Tellington's plea as knowingly, voluntarily and intelligently made. A pre-sentence investigation was ordered and prepared.

{¶6}   At Tellington's sentencing hearing the State recommended the court impose the maximum sentence of 13 years of imprisonment because Tellington had not accepted responsibility for his crime, and well as the seriousness of the offense and its negative effect upon the victim.  Defense counsel advocated for less than the maximum because Tellington had no criminal history other than a minor traffic citation, strong family support, and no incidences of bad behavior while on bond pending sentencing.  Further, counsel argued that the act of pleading guilty demonstrated that Tellington had accepted responsibility.  The robbery victim, who was 83 years old at the time of the crime, made a statement to the court, expressing how the robbery had a severely negative impact on her life.  The trial court asked Tellington if he wanted to make a statement in mitigation of sentence.  Tellington made a brief statement. He apologized to the victim and stated that he accepted full responsibility for his actions.

{¶7}   At the close of the hearing, the court sentenced Tellington to ten years of imprisonment: seven years for the aggravated robbery, to be served consecutively to the three-year mandatory sentence for the firearm specification.  The court gave Tellington jail time credit and informed Tellington that upon completion of his sentence he would be placed on five years of mandatory post-release control.

### Plea

{¶8}   In his first of two assignments of error, Tellington asserts:

{¶9}   "The trial court failed to substantially comply with Crim.R. 11, and, therefore, erred in accepting the appellant's guilty plea.  As such, the Defendant's guilty was not knowing, intelligent and voluntary."

{¶10}  A plea must be made knowingly, voluntarily and intelligently.  *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, at ¶7; *State v. Engle* (1996)*,* 74 Ohio St.3d 525, 527, 660 N.E.2d 450.  If not, it has been obtained in violation of due process and is void. *State v. Martinez*, 7th Dist. No. 03 MA 196, 2004-Ohio-6806, at ¶11, citing *Boykin v. Alabama* (1969), 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274.  When determining the voluntariness of a plea, this court must consider all of the relevant circumstances surrounding it.  *State v. Johnson*, 7th Dist. No. 07 MA 8, 2008-

Ohio-1065, at ¶8, citing *Brady v. United States* (1970), 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747. Thus, the trial court must engage the defendant in a colloquy pursuant to Crim.R. 11(C). *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶25-26. During the colloquy, the trial court is to provide specific information to the defendant, including constitutional and nonconstitutional rights being waived. Crim.R. 11(C)(2); *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355.

**{¶11}** The constitutional rights include the right against self-incrimination, the right to a jury trial, the right to confront one's accusers, the right to compel witnesses to testify by compulsory process, and the right to have the state prove the defendant's guilt beyond a reasonable doubt. Crim.R. 11(C)(2)(c); *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶19-21. A trial court must strictly comply with these requirements. Id. at ¶31; *State v. Ballard* (1981), 66 Ohio St.2d 473, 477. "Strict compliance" does not require a rote recitation of the exact language of the rule. Rather, a reviewing court should focus on whether the "record shows that the judge explained these rights in a manner reasonably intelligible to the defendant." Id. at paragraph two of the syllabus.

**{¶12}** The nonconstitutional rights include that the defendant must be informed of the effect of his plea, the nature of the charges, and the maximum penalty involved, which includes an advisement on post-release control. Further the defendant must be notified, if applicable, that he is not eligible for probation or the imposition of community control sanctions. Finally, the defendant must be notified that the court may proceed to judgment and sentence after accepting the guilty plea. Crim.R. 11(C)(2)(a)(b); *Veney*, 120 Ohio St.3d 176 at ¶10-13; *Sarkozy*, 117 Ohio St.3d 86, at ¶19-26. With regard to these nonconstitutional rights, substantial compliance is required. *State v. Nero* (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." Id. at 108. In addition, a defendant who challenges his guilty plea on the basis that the advisement for the nonconstitutional rights did not substantially comply with Crim.R. 11(C)(2)(a)(b) must also show a prejudicial effect, meaning the plea would not have otherwise been entered. *Veney,* 120 Ohio St.3d 176 at ¶15 citing *Nero*,

56 Ohio St.3d at 108.

{¶13} Tellington first argues that the trial court failed to substantially comply with Crim.R. 11(C)(2)(a) by failing to adequately inform him of the nature of the charges against him. However, as Tellington concedes in his brief, "Ohio courts do not require that the trial court inform the accused of the actual elements of the charged offense; a defendant can obtain this information from whatever source, be it from the trial court itself, the prosecutor, or some other source." *Johnson*, 2008-Ohio-1065, at ¶14, citing, *State v. Blair* (1998), 128 Ohio App.3d 435, 437-438, 715 N.E.2d 233.

{¶14} In *Johnson*, this court held that the trial court complied with Crim.R. 11(C)(2)(a) because the accused signed a document wherein he stated, "[c]ounsel has advised me and I fully understand the nature of the charge(s) against me and the elements contained therein" and his counsel told the court that the accused was ready to plead guilty. Id. at ¶15.

{¶15} This presents a similar situation as Tellington signed a document stating: "I represent that I am satisfied with my legal counsel and that I fully understand the nature of the charge(s) and/or specification(s) against me and the elements contained therein." Tellington affirmed at the hearing that he had reviewed that document thoroughly with his attorney.

{¶16} Further, the trial court informed Tellington generally about the nature of the charges against him during the colloquy:

{¶17} "THE COURT: Do you understand that these documents state that you want to withdraw your former plea of not guilty and now enter a plea of guilty to one count of aggravated robbery, a violation of Ohio Revised Code 2911.01(A)(1)(C), a felony of the first degree, and to a firearm specification in violation of Ohio Revised Code 2941.145(A). Is that correct, Mr. Tellington?

{¶18} "DEFENDANT TELLINGTON: Yes, ma'am."

{¶19} Finally, Tellington entered his guilty plea near the close of the State's case against him at trial. Although we do not have a transcript of the trial for review on appeal, we may presume that Tellington gained knowledge of the nature of the charges against

him during the trial as well. See, e.g. *State v. Hull*, 7th Dist. No. 04 MA 2, 2005-Ohio-1659, at ¶37 ("without a complete transcript, this court must presume the regularity of the proceedings below.")

{¶20} Tellington supports his argument with *State v. Blair* (1998), 128 Ohio App.3d 435, 715 N.E.2d 233, which is distinguishable. In *Blair*, the defendant entered a guilty plea on the day of trial and there was nothing in record to support a finding he was ever advised, by anyone, of the nature of the charge to which he pled guilty. By contrast, the record sufficiently indicates that under the totality of the circumstances, Tellington understood the nature of the charges against him.

{¶21} Second, Tellington contends that the trial court failed to substantially comply with Crim.R. 11(C)(2)(b) by failing to explain the effect of the guilty plea. However, where a defendant fails to assert his innocence there is a presumption that he understands the effect of his guilty plea. "A defendant who has entered a guilty plea without asserting actual innocence is presumed to understand that he has completely admitted his guilt. In such circumstances, a court's failure to inform the defendant of the effect of his guilty plea as required by Crim.R. 11 is presumed not to be prejudicial." *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, at syllabus. Tellington never asserted his actual innocence during the plea hearing. Therefore, any error in failing to inform him that by pleading guilty he was admitting guilt is harmless.

{¶22} The case cited by Tellington, *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, does not support his argument. *Jones* involved a guilty plea to a petty misdemeanor, and more importantly, the Court in *Jones* concluded there was no prejudice because *Jones* failed to assert his actual innocence:

{¶23} "Jones presented no evidence that at the time of his guilty plea, he claimed innocence. Under *Griggs*, any error by the trial court in failing to adequately inform him of the effect of his plea was not prejudicial, because Jones did not assert his innocence at the colloquy. He is, therefore, presumed to understand that a plea of guilty is a complete admission of guilt. [*State v. Griggs*],103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶19. At the plea hearing, his attorney explained why Jones was entering the guilty plea:

'In order to spare this family any further grief he's agreed to enter this plea today and accept responsibility for his actions in this case.'" *Jones* at ¶54.

**{¶24}** In sum, Tellington's plea was knowing, voluntary and intelligent. Accordingly, Tellington's first assignment of error is meritless.

### Sentencing

**{¶25}** In his second assignment of error, Tellington asserts:

**{¶26}** "The trial court's sentence of seven years (7) of imprisonment constituted an abuse of discretion and was contrary to law. Further, the Appellant was denied due process of law at the sentencing hearing."

**{¶27}** When reviewing a felony sentence, an appellate court first reviews the sentence to ensure that the sentencing court clearly and convincingly complied with the applicable laws. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶4. A trial court's sentence would be contrary to law if, for example, it were outside the statutory range, in contravention to a statute, or decided pursuant to an unconstitutional statute. Id. at ¶15. If this inquiry is satisfied, an appellate court then reviews the trial court's sentencing decision for abuse of discretion. *Kalish* at ¶17, 19-20. An abuse of discretion means more than an error of law or judgment; but rather implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

**{¶28}** With regard to the first prong of the inquiry, Tellington's sentence is clearly and convincingly not contrary to law. The ten-year sentence he received, seven years for the aggravated robbery charge to be served consecutively with the three-year mandatory sentence for the firearm specification, was within the statutory range. See R.C. 2911.01(A)(1)(C), 2929.14(A)(1), 2941.145(A), 2929.14(D)(1)(a)(ii). In addition, the trial court expressly stated that it had considered the principles and factors contained in R.C. 2929.11 and 2929.12. Further, Tellington was afforded his allocution rights pursuant to Crim.R. 32(A)(1). The trial court asked Tellington if he had anything to say before the sentence was imposed, and Tellington gave a brief statement, apologizing for his actions. Finally, the court properly notified Tellington that upon his release from prison he would

be subject to five years of mandatory post-release control. R.C. 2967.28(B).

{¶29} Tellington contends his sentence was contrary to law because it was allegedly imposed by the court as punishment for Tellington's exercise of his constitutional right to a jury trial, imposing a "trial tax" upon him.

{¶30} "[I]t is patently unconstitutional to penalize a defendant for exercising his constitutional or statutory rights, which would include the right to trial. See Pearce, 395 U.S. at 724. See, also, *State v. Simpkins*, 117 Ohio St.3d 420, 884 N.E.2d 568, 2008-Ohio-1197, ¶33 (equating vindictive sentence with unconstitutional sentence). A defendant should thus never be punished for exercising his right to trial or for refusing to enter into a plea agreement. See *State v. O'Dell* (1989), 45 Ohio St.3d 140, 147, 543 N.E.2d 1220.

{¶31} "Accordingly, a trial court may not impose an increased sentence in retaliation for the defendant choosing to exercise his right to trial, regardless of whether the evidence of his guilt is said to be overwhelming." *State v. Mayles*, 7th Dist. No. 04 CA 808, 2005-Ohio-1346, ¶45, citing *State v. Scalf* (1998), 126 Ohio App.3d 614, 620, 710 N.E.2d 1206. We do not presume impropriety by the mere fact that the sentence imposed after trial is greater than a sentence offered by the state at plea negotiations. Id. at ¶46.

{¶32} "However, if the record also demonstrates that the defendant received an enhanced sentence in retaliation for exercising his constitutional right to a jury trial, then the sentence should be vacated unless the court specifically stated that this was not a reason." *State v. Donald*, 7th Dist. No. 08 MA 154, 2009-Ohio-4638, at ¶25-26.

{¶33} Tellington points to a statement by the prosecutor in support of his argument that the trial court imposed a trial tax upon him. Although the prosecutor did criticize Tellington for waiting to plead guilty until after the start of the trial, the comments demonstrate that Tellington had not taken full responsibility for his actions:

{¶34} "[PROSECUTOR]: Judge, not only did Mrs. Rosa [the victim] have to go through this experience but she had to come into this court and testify in front of a jury. This wasn't a plea deal made as you know prior to trial. We were in the trial. She had to

testify, which, again, was very traumatic for her. Not only did she have to live through the experience but come in here and tell a jury full of people that she didn't know about this traumatic thing that happened to her. And no responsibility by these defendants were taken prior to trial. They did plead in the middle of the case -- well, actually almost at the close of the state's case as the court's aware, but those circumstances were not because they took responsibility. It was due to a witness they couldn't find. I do believe in giving credit when someone takes responsibility for their crime, but in this situation they did not. They knew prior to her testimony they could do that and they chose not to. So I would ask based upon those reasons and the fact that they both used a gun to commit this crime, that they both be sentenced to the maximum term that they can be sentenced to."

{¶35} Even assuming the above comments by the prosecutor were improper and there was no objection to them by the defense, there is nothing in the record indicating that the trial court's chosen sentence was intended "to punish Tellington for exercising his right to a jury trial. In his brief Tellington concedes that the trial court "did not specifically rely on or refer to this 'trial tax' in sentencing Appellant."

{¶36} Tellington argues, however, that once the appearance of a trial tax has been created, the trial court has a duty to rebut the inference with an unequivocal statement that it did not consider the defendant's decision to go to trial in fashioning its sentence. Tellington cites *State v. Morris* (2005), 159 Ohio App.3d 775, 825 N.E.2d 637, and *Scalf* in support of his argument, however, these cases are factually distinguishable.

{¶37} In *Scalf*, the *sentencing court* made statements that created the appearance of a trial tax. Specifically, in *Scalf* court stated: "You had an opportunity to do the right thing, which is to admit your culpability, and you did not do it * * * I want you to know, had he been willing to enter a plea on this case, he would have been afforded probation. He wouldn't have gone to the institution. But now you're going to the institution." *Scalf* at 623. In *Morris*, the sentencing court "candidly stated that he was angry that Morris had elected to go to trial," and when imposing Morris's sentence, the sentencing court noted it had considered that fact that Morris decided to take the case to trial rather than pleading guilty. *Morris* at ¶15. Similarly, in *Donald*, the sentencing court made improper

comments about the defendant's exercise of his right to go to trial, it participated in plea discussions, and disparagingly asked the defendant if he knew the difference between the two-year sentence offered by the state and the maximum eight-year sentence he would probably get after trial. Id. at ¶29.

{¶38} By contrast, in this case, the trial court made no improper comments regarding Tellington's exercise of his right to go to trial. Tellington's sentence was clearly and convincingly not contrary to law.

{¶39} Turning to the second prong of the test, the trial court's overall sentencing decision was not an abuse of discretion. Although recidivism was less likely due to Tellington's lack of a criminal history, the crime was made more serious due to the advanced age of the victim and the severe psychological harm the crime caused her. See R.C. 2929.12(B)(1)-(2), and (E). Specifically, the victim testified:

{¶40} "Since all this has happened to me I now suffer with a series of problems with reliving this horrible experience through nightmares, sleeplessness, anxiety, chest pains, and panic attacks for which I have been in and out of the hospital. I cannot go out into the public without constantly watching everyone around me and wondering if it's safe."

{¶41} The trial court could have imposed anywhere from an eight to a thirteen-year prison sentence upon Tellington. The court chose a mid-range sentence of ten years, which is not an abuse of discretion based upon the above considerations. Accordingly, Tellington's second assignment of error is meritless.

{¶42} In conclusion, Tellington's guilty plea was knowing, voluntary and intelligent and the trial court fully complied with Crim.R. 11(C). And Tellington's sentence was neither an abuse of discretion nor contrary to law. Accordingly, the judgment of the trial court is affirmed.

Waite, P.J., concurs.

Vukovich, J., concurs.